UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――x
In the Matter of the Search of
THE PREMISES KNOWN AND DESCRIBED AS
100 SWEENEYDALE AVENUE, BAYSHORE          GOVERNMENT'S
NEW YORK, A ONE STORY BRICK BUILDING      RESPONSE TO
WITH A SIGN THAT HAS THE NUMBER "100"     PETITIONER'S MOTION
(SUBJECT PREMISES)                        FOR AN ORDER
                                          TO SHOW CAUSE

        -and-
                                          Docket No.: MISC. 14 1179 (ADS)
THE PREMISES KNOWN AND DESCRIBED AS
15-13 132 STREET, COLLEGE POINT, NEW YORK
A TAN BRICK WAREHOUSEWITH ONE CARGO
BAY AND A SIGN ABOVE THE CARGO BAY
THAT SAYS "EXCEL WHOLESALE INC. CASH
AND SUPPLIERS OF HEALTH AND BEAUTY AID
AND GENERAL MERCHANDISE 15-13"
(SUBJECT PREMISES)
―――――――――――――――――――――――――x

I, ANDREW J. WEISS, being an attorney-at-law admitted to practice in the Courts of the State of New York and appointed as a Special Assistant United States Attorney for the Eastern District of New York, an Assistant District Attorney, by LORETTA E. LYNCH, United States Attorney, do hereby affirm the statements herein to be true under the penalties of perjury, except such as are made upon information and belief, which matters I believe to be true.  On behalf of Nassau County and the United States of America, I am submitting this affirmation in response to the Order to Show Cause returnable on October 24, 2014, before this Court, and the Declaration in Support by Thomas F. Liotti, Esq. (hereinafter, the Liotti Declaration).

**STATEMENT OF FACTS**

1.      On July 24, 2014, Hon. William Wall, U.S.M.J., signed search warrants authorizing the searches of 100 Sweeneydale Avenue, Bay Shore, New York (hereinafter, the Bay Shore location) and 15-13 132 Street, College Point, New York (hereinafter, the College Point location), and the seizure of certain property found within the two locations.  Said search warrants authorized the seizure of the "evidence, fruits, and instrumentalities of violations of

Title 10, U.S.C., Sections 371, 1341, 1349, and 2320(a)."

2.      The search warrants and their supporting documentation (e.g., supporting affidavits by Special Agent Richard Branda) were filed under seal.

3.      On or about and between July 24, 2014 and August 7, 2014, said search warrants were executed at the Bay Shore location and the College Point location.  As a result, property and documents were removed from the locations and are currently in the custody of the Government.

4.      After the execution of the search warrants, Thomas Liotti, Esq. contacted the Government and advised that he represents the entities that occupy the Bay Shore and College Point locations (hereinafter, the petitioners); several conversations ensued between Mr. Liotti and me regarding his request to review the sealed search warrant documents and to have the seized property and documents returned to his clients.

5.      On October 14, 2014, the petitioners filed the instant Order to Show Cause, seeking the unsealing of the search warrant and supporting documents, a showing of the specific property seized, and the return of the seized property to the petitioners.

## I.  UNSEALING THE SEARCH WARRANT DOCUMENTS

6.      Although there is a general right to inspect judicial records [Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978)], that right is not absolute.  In the Matter of New York Times Co., 828 F.2d 110 (2d Cir. 1987).

7.      In In the Matter of Searches of Semtex Industrial Corporation 64 and 74 Commercial Street Freeport, New York, et al., 876 F. Supp. 426 (E.D.N.Y. 1995), the Government obtained sealed search warrants and executed same as part of a multi-state fraud investigation involving the Department of Defense.  In an opinion written by Your Honor, this Court recognized that there is not an automatic right to access search warrant documents after execution.  Instead, this Court held that, "The propriety of sealing search warrant documents turns on the government's

need for secrecy and lies within the discretion of the Court." Id., at 429. In exercising its discretion, this Court recognized that "the need for sealing affidavits may remain after execution and in some instances even after indictment (citations omitted)." Id., at 429.

8. As in Semtex, these search warrants were executed as part of a multi-state investigation. At the same time, the government also executed warrants in three other states. Also, as with Semtex, the investigation is continuing. The Government agrees with this Court's view in Semtex that "… it is reasonable to believe that the need for secrecy continues in a complex multi-state investigation prior to indictment." Id., at 429. It is respectfully submitted that the instant investigation is "a complex multi-state investigation," and the "need for secrecy continues" until indictments are issued.

9. Applying the Semtex opinion to the instant case, the Government consents to the unsealing of the search warrant affidavits at the time when an indictment has been filed against the petitioners, or by May 10, 2015, whichever is earlier. Even with the unsealing, the Government opposes unsealing any information regarding undercover agents or cooperators, whether or not an indictment has been filed.

## II. THE INSPECTION AND RETURN OF SEIZED PROPERTY

10. The petitioners claim that they have been "conducting a legal business here for many years." Liotti Declaration ¶4. That is certainly not what the results of the search indicated.

11. A review of the property seized pursuant to the search warrants shows that the petitioners were not engaged in "legitimate businesses" (Liotti Declaration ¶9), but instead were trafficking in counterfeit and "grey market" goods, both being a violation of Federal law. Upon inspection, the vast majority of the seized property is counterfeit and will be subject to a forfeiture action either independently or in conjunction with a federal case.

12. The petitioners in their pleadings concede that they were in possession of counterfeit merchandise, which further supports the Government's position. See, Liotti Declaration ¶13.

13. The petitioners' claim that the products they import are inspected by the United States Food and Drug Administration (FDA) are unsupported (See Liotti Declaration ¶5). I was advised during telephone conversations with petitioners' counsel that every container that petitioners import into the United States is checked by FDA agents before entry. Based on communications with representatives from the FDA, there is nothing in FDA records that support counsel's assertion.

14. During the execution of the search warrants, the Government seized $26,389.00 in United States currency and intends to move for forfeiture as the proceeds of criminal activity. On September 23, 2014, the forfeiture process was formally commenced, the petitioners were advised of the Government's intent and, to date, have not responded. See exhibit hereto.

15. All documents seized from the petitioners were lawfully taken under the authority granted by the search warrants, and the petitioners claim that documents were seized in excess of that authority is groundless.

16. The Government made every effort to only seize documents authorized under the search warrants by first identifying counterfeit inventory and then seizing only those documents that related to that inventory.

17. Upon information and belief, it was the employees of the petitioners, not Government agents, who selected which documents were seized pursuant to the search warrants. Government agents only requested documents relating to inventory that was identified as being counterfeit. Upon identifying counterfeit inventory, the petitioners selected which documents related to the counterfeit inventory and provided same to the Government agents.

18. It is the Government's intent to only take possession of property and documents that are authorized under the search warrants. Any property seized that is not counterfeit will be returned to the petitioners shortly. Indeed, that process is underway as the seized non-counterfeit property is available for pickup. The non-counterfeit property constitutes a small percentage of the items

seized.

19.  The Government will make available for inspection all property and documents seized and the petitioners are free to make copies of the petitioner's records that are in the Government's possession.

20.  The Government opposes the release and return of counterfeit and grey market products that were seized pursuant to the search warrants. Said items are contraband and, therefore, the petitioners suffer no irreparable harm by being deprived of same.

WHEREFORE, the Government respectfully submits that the relief prayed for in the Order to Show Cause filed by the petitioners be denied in its entirety, and for such other relief as the Court finds just and equitable.

Dated: October 24, 2014
Central Islip, New York

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
By: Andrew J. Weiss
Special Assistant United States Attorney
610 Federal Plaza
Central Islip, New York 11722
(516) 571-2149

To:  Hon. Arthur D. Spatt
United States District Judge
Eastern District of New York
Central Islip, New York 11722

Thomas Liotti, Esq.
Counsel for the Petitioners