At the United States District Court held in and for the Eastern District of New York at the Alfonse M. D'Amato, U.S. Courthouse, located at 100 Federal Plaza, Central Islip, New York 11722-4449, on the 13 day of April, 2015

PRESENT:

<u>Honorable Arthur D. Spatt</u>
United States Magistrate Justice

------------------------------------------------------------X

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED
AS 100 SWEENEYDALE AVENUE,
BAYSHORE, NEW YORK, A ONE STORY
BRICK BUILDING WITH A SIGN THAT HAS
THE NUMBER "100" (Subject Premises)

        -and-

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED
AS 15-13 132nd STREET, COLLEGE POINT,
NEW YORK, A TAN BRICK WAREHOUSE
WITH ONE CARGO BAY AND A SIGN
ABOVE THE CARGO BAY THAT SAYS
"EXCEL WHOLESALE INC. CASH AND
CARRY SUPPLIERS OF HEALTH AND
BEAUTY AID AND GENERAL
MERCHANDISE 15-13" (Subject Premises),

------------------------------------------------------------X

**ORDER TO SHOW CAUSE**

Docket No. MISC 14 1179 (ADS)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 13 2015   ★

**LONG ISLAND OFFICE**

**WARNING:** **YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT.**

**NOTICE:** **THE PURPOSE OF THE HEARING IS TO PUNISH YOU FOR A CONTEMPT OF COURT. SUCH PUNISHMENT MAY CONSIST OF FINE OR IMPRISONMENT, OR BOTH, ACCORDING TO LAW**

Upon the annexed declaration of Thomas F. Liotti, dated April 9, 2015, let the United States

Attorney's Office for the Eastern District of New York (Central Islip); show cause before this Court,

1

at the United States District Court, Eastern District of New York, Alfonse M. D'Amato, U.S. Courthouse, 100 Federal Plaza, Central Islip, New York 11722-4449, on the 22nd day of April, 2015, at 10:00 in the forenoon thereof, or as soon thereafter as counsels can be heard why an order should not be made:

(a)   Adjudging the Respondent to be in contempt of Court based on its willful and intentional failure to obey and comply with any of the terms of the Order of the Honorable Arthur D. Spatt dated January 10, 2015; and

(b)   Enforcing the terms of the Order of this Court dated January 10, 2015, and directing the Respondent to immediately comply with all of the terms as set forth therein; specifically, including but not limited to, returning to the Petitioners all legitimate, non-counterfeit property and related currency, such that said property and currency is made available for immediate pick up by the Petitioners; and

(b)   For such other and further relief as to the Court may seem just and proper.

**ORDERED**, that service of this order together with a copy of the papers upon which it is granted, upon the United States Attorney's Office for the Eastern District of New York, at 610 Federal Plaza, Central Islip, New York 11722-4454, *via overnight mail*, BY PERSONAL SERVICE on or before the 16th day of April, 2015, PRIOR TO 5PM be deemed good and sufficient service.

E N T E R:

_____
UNITED STATES ~~MAGISTRATE~~ JUDGE
DISTRICT

Attorney signature pursuant to
Sec. 130-1.1-a of the Rules of the
Chief Administrator (22 NYCRR)

_____
Thomas F. Liotti, Esq. (TL 4471)
LAW OFFICES OF THOMAS F. LIOTTI

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED
AS 100 SWEENEYDALE AVENUE,
BAYSHORE, NEW YORK, A ONE STORY
BRICK BUILDING WITH A SIGN THAT HAS
THE NUMBER "100" (Subject Premises)

        -and-

In the Matter of the Search of

THE PREMISES KNOWN AND DESCRIBED
AS 15-13 132nd STREET, COLLEGE POINT,
NEW YORK, A TAN BRICK WAREHOUSE
WITH ONE CARGO BAY AND A SIGN
ABOVE THE CARGO BAY THAT SAYS
"EXCEL WHOLESALE INC. CASH AND
CARRY SUPPLIERS OF HEALTH AND
BEAUTY AID AND GENERAL
MERCHANDISE 15-13" (Subject Premises)
-----------------------------------------------------------X

**DECLARATION
IN SUPPORT OF
ORDER TO SHOW CAUSE**

Docket No. MISC 14 1179 (ADS)

        Thomas F. Liotti, an attorney admitted to practice law in the state of New York and in this Court, hereby declares under penalty of perjury the following:

        1.     In regard to these matters, I represent, AKR Corporation by Abdul Khalil Rashidzada, President, Abdul Khalil Rashidzada, individually, Magid Rashidzada, individually, Mohamed Iqbal Rashidzada, individually, and Amin Muhayya, individually; and Manhattan Wholesalers Bronx Corp., by Ahmad Hamid Hamrah, President, and Ahmad Hamid Hamrah, individually; and Excel Wholesale Distributors, Inc., by Latif Tursonzadah, President, Latif Tursonzadah, individually, and Farid Tursonzadah, individually; and AMI Rashidzada Realty, Inc. by Abdul Khalil Rashidzada, Principal, Abdul Khalil Rashidzada, Individually, Magid Rashidzada, Individually, and Amin Muhayya, Individually; and AKR Realty, LLC by Magid Rashidzada, Principal, Magid Rashidzada, Individually, Mohamed Iqbal Rashidzada, Individually, and Amin Muhayya,

1

Individually; and Value Distributors, Inc. by Najeeb Jalili, Principal, and Najeeb Jalili, Individually; and RT Commercial Realty, LLC by Latif Tursonzadah, Principal, and Latif Tursonzadah, individually, Farid Tursonzadah, individually, Mohamed Iqbal Rashidzada and Magid Rashidzada, and as such, I am fully familiar with the facts and circumstances of this case. As noted herein, I represent all of the individuals and corporations that were the subject of the aforementioned warrants, (**copies of are attached hereto as Exhibit A**), and execution thereof between July 24, 2014 and August 7, 2014, at the locations in these captions.

2.      As noted herein, United States Magistrate Judge William D. Wall signed the aforementioned search warrants on July 24, 2014, at 2:15 p.m., providing for a search and seizure therein based upon the Affidavits provided by Special Agent, Richard Branda and based upon alleged probable cause to believe that crimes had been or were being, committed on said premises, to wit: violations of 18 U.S.C. §§ 371, 1341, 1349 and 2320 (a), conspiracy, mail fraud, and trafficking in counterfeit goods or services.

3.      The warrants were executed by many State and Federal agents. They are administered by the United States Attorney; Department of Justice; the Food and Drug Administration (F.D.A.), and the State of New York by the Nassau County District Attorney's Office.

4.      Upon information and belief, agents, police, and law enforcement personnel seized money and property from the premises indicated without probable cause and far in excess of what they were allowed to search and seize pursuant to the aforesaid warrants, including, but not limited to, personal property and merchandise subject to being fulfilled by orders from purchasers; United States currency, which was legally obtained during the conduct of legitimate business activities; computers; merchandise; software; hard drives; disks; books; and records. Yet, the companies and individuals involved have been conducting a legal business in the United States for many years.

5.      On or about October 14, 2015, Petitioners brought forth an Order to Show Cause seeking an unsealing of the warrant information and a return of the product and currency seized.

2

Accordingly, following a hearing before this Court on October 24, 2014, and pursuant to an Order of this Court dated January 15, 2015, if an indictment was not filed by January 24, 2015, [three (3) months *nunc pro tunc* from the date of the hearing date in this matter on October 24, 2014], the Affidavit and supporting documents in connection with the two (2) search warrants executed on July 24, 2014, by State and Federal agents at the two (2) subject premises, were to be immediately unsealed and any other related search warrant materials revealed to the Petitioners; and further, that by October 29, 2014, [five (5) days *nunc pro tunc* of the hearing date in this matter on October 24, 2014], all legitimate, non-counterfeit property was to be released and made available for immediate pick up by the Petitioners. **A copy of the Minutes from the hearing on October 24, 2014, together with the Court's Order dated January 15, 2015 is collectively annexed hereto as Exhibit B.** The Respondents did not comply with the Court's directive to release all legitimate, non-counterfeit property within five days of the hearing on October 24, 2014.

6.    While the Respondent did provide the supporting documents in connection with the two (2) search warrants executed on July 24, 2014, no indictment has been filed against the Petitioners, to date, despite every good faith effort to retrieve the majority Petitioners' property has been denied, and none of the currency seized has been returned.

7.    On or about February 10, 2015, the Petitioners sent a letter to the Respondent counsel and Special Agent, Richard Branda, with Homeland Security Investigations with a compiled list of items that had not yet been returned, (**a copy of the correspondence is annexed hereto as Exhibit C**); nonetheless, Petitioners have been recently advised summarily and conclusively, that while certain few products would be returned, the majority is to remain held as they have been unilaterally characterized as "illegitimate," by the Respondent without any substantiation or explanation. It should also be noted that upon information and belief, U.S. Attorney, Charles Peter Kelly, Esq. and Special Agent Richard Branda have failed to comply with the Court's Order and are still holding some select items of property, which they acknowledge should have been previously

3

released. See, Holder Limits Police on Seized Assets. (2015, January 17). *New York Newsday*, p A5, citing, O'Harrow, Robert Jr., Sari Horwitz and Steven Rich, (2015, January 16). *The Washington Post*, Retrieved from http://www.washingtonpost.com. **A copy of the Newsday article dated January 17, 2015 is annexed hereto as Exhibit D**.

   8.     Notwithstanding repeated and good faith efforts to provide all documentation and witnesses to substantiate the legalities of the products and businesses involved, the United States Government and State authorities have continued to withhold the majority of the property seized since July 2014, causing the Petitioners significant damage.

   9.     There is no probable cause to believe that these individuals and corporations committed any crimes or violated United States laws. See, U.S. Const. am. 4. They buy legitimate cosmetics and other products from wholesalers and distributors in Europe and elsewhere. The products are inspected by the Federal Drug Administration (F.D.A.), here in the United States and are released for sale by these individuals and companies to retailers. Most importantly, no indictment has been issued against any of the individuals or companies named herein.

   10.     The law enforcement conducting this search and seizure has caused great embarrassment and the total disruption of the legitimate businesses that these individuals and corporations were conducting. The "ripple effect" is also profound, in that businesses, both foreign and domestic, have ceased to do business with the Petitioners because they have learned of this illegal search and seizure. Further, there is no legitimate basis to withhold this property for a long as they have. Much of the products are cosmetics and toiletries with expiration dates thereon. Accordingly, the Petitioners are being further damaged with each passing day that their product is not returned to them. Upon information and belief, this property amounts to as much as $300,000.00.

11.     The actions by law enforcement and the State and Federal government, acting in pari delicto are a violation of my clients' civil rights and a denial of due process of law. See, 42 U.S.C. § 1983.

12.     No previous application for the same or similar relief has been made or granted in this matter, except that Petitioners previously brought an Order to Show Cause before this Court seeking an unsealing of the search warrants and related supporting materials, together with a release of all property not determined to be counterfeit or illegitimate. Said application was granted, to the extent that if an indictment was not filed within three (3) months from the date of the hearing, the supporting materials were to be released, and within five (5) days of the hearing date, the legitimate property was to be returned to the Petitioners. To date, it is the Petitioners understanding and belief that legitimate property and currency continues to be held, in direct violation of the Petitioners rights.

13.     Based on the foregoing, it is respectfully requested that the relief requested herein be granted in all respects.

**WHEREFORE**, it is respectfully submitted that by virtue of all of the above, and for the grounds set forth in the movant's papers, the instant application should be granted in all respects; and for such other, further and different relief as to the Court may deem just and proper.

Dated: Garden City, New York
         April 9, 2015

THE LAW OFFICE OF THOMAS F. LIOTTI
By: Thomas F. Liotti, Esq. (TL 4471)
600 Old Country Road, Suite 530
Garden City, New York 11530
(516) 794-4700

5

# Exhibit "A"

# United States District Court

_____ EASTERN _____ **DISTRICT OF** _____ NEW YORK _____

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

THE PREMISES KNOWN AND DESCRIBED AS
100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK, A ONE
STORY BRICK BUILDING WITH A SIGN THAT HAS THE
NUMBER "100" ("SUBJECT PREMISES")

## SEARCH WARRANT

**CASE NUMBER:**

# 14-0685M

TO: Special Agent Richard Branda _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Richard Branda _____ who has reason to
                                                        Affiant

believe that [ ] on the person of or [X] on the premises known as (name, description and/or location)

PREMISES KNOWN AND DESCRIBED AS:
100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK, A ONE STORY BRICK BUILDING WITH
A SIGN THAT HAS THE NUMBER "100" ("SUBJECT PREMISES")

in the EASTERN _____ District of NEW YORK _____ there is now concealed a certain
person or property, namely (describe the person or property)

evidence, fruits and instrumentalities of violations of Title 18, U.S.C.,
Sections 371, 1341, 1349 and 2320(a) as described on Attachment B hereto.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the issuance
of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ August 7, 2014 _____
                                                                          Date

(not to exceed 14 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime - 6:00 A.M. to 10:00 P.M.)(at any time in the day or night as I find reasonable cause has
been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt
for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this
warrant to the duty U.S.M.J. _____ as required by law.
                        United States Judge or Magistrate Judge

July 24, 2014 @ 2:15 pm _____ at Central Islip, New York
Date and Time Issued                            City and State

U.S.M.J. William D. Wall
Name and Title of Judicial Officer                    Signature of Judicial Officer

## ATTACHMENT A

### Property to be Searched

The premises known and described as AKR INCORPORATED, 100 SWEENEYDALE AVENUE, BAYSHORE, NEW YORK ("AKR"), which is located in a one story brick building with red brick in the center portion of the building and white on each side. The left side has two cargo bays and the middle has an office entrance. The right side has three cargo bays. A sign on the building reads "100."

## ATTACHMENT B

### AKR INCORPORATED

The following items, which constitute evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy to Commit an Offense Against the United States), 1341 (Mail Fraud), 1349 (Mail Fraud Conspiracy) and 2320 (Trafficking in Counterfeit Goods), may be seized from within the premises known and described as AKR Incorporated, 100 Sweeneydale Avenue, Bayshore, New York, the persons of any owners, managers or employees of AKR Incorporated therein, and from any safes, lockers or closed containers therein, as well as any trucks on the company property bearing the company name or logo, any cargo that is consigned to AKR Incorporated and any containers on the property of AKR Incorporated by agents of Immigration and Customs Enforcement, Homeland Security Investigations, and any other federal law enforcement or task force officers assisting them, and the searchers may be accompanied by civilian industry representatives specifically for the purpose of identification of goods and packaging bearing counterfeit trademarks, and of materials used to manufacture or package such goods:

(a)  any and all records or documentation reflecting ownership of AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(b)  any and all documents, materials or devices relating to the importation, purchase, manufacture, sale, shipment, handling, or distribution of goods bearing counterfeit trademarks, as well as related packaging, labels, labeling and literature;

(c)  any and all quantities and forms of goods bearing counterfeit trademarks;

(d)  any and all documents relating to employees, customers, or suppliers of AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Price Incorporated, which pertain to the manufacture or distribution of goods bearing counterfeit trademarks;

(e)    any contracts, agreements, records and/or documentation of agreements made between AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated with any other entity providing goods bearing counterfeit trademarks;

(f)    any and all communication, in any form, received or sent by AKR Incorporated, Pardeep Malik, Hamant Mullick, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated to any individual or entity associated with the purchase, sale, shipment distribution, handling, use, manufacturing, or advertisement of goods bearing counterfeit marks;

(g)    any and all transactional financial records for AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including but not limited to, checks, cancelled checks, check registers, ledgers, bank statements, account statements, wire transfers, deposit items, credit card processing equipment, and any other financial papers, including proceeds, such as U.S. currency, which relate to the purchase, sale, shipment, distribution, handling, advertisement, use or manufacturing of goods bearing counterfeit marks;

(h)    any and all sales tax records and reports of sales by AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated;

(i)    any and all financial documents related to AKR Incorporated, Best Price Traders NA Incorporated, Universal Price Incorporated and Glow Derma Incorporated, including, but not limited to, bank records, mortgage documents and income tax returns;

2

(j)     any and all electronic devices which are capable of
        analyzing, creating, displaying, converting or
        transmitting electronic or magnetic computer impulses
        or data, including computers, computer components,
        computer peripherals, work processing equipment,
        modems, monitors, printers, plotters, encryption
        circuit boards, optical scanners, external hard
        drives, digital video recorders and monitors, other
        computer related electronic devices, and wireless
        devices, such as cellular telephones and smart phones;

(k)     any computers, electronic media or wireless devices,
        such as cellular telephones and smart phones, that
        were or may have been used as a means to commit the
        offenses described above;

(l)     for any computer, computer hard drive, or other
        physical object upon which computer data can be
        recorded (hereinafter, "COMPUTER") that is called for
        by this warrant, or that might contain things
        otherwise called for by this warrant:

        •   evidence of who used, owned, or controlled the
            COMPUTER at the time the things described in this
            warrant were created, edited, or deleted, such as
            logs, registry entries, configuration files,
            saved usernames and passwords, documents,
            browsing history, user profiles, email, email
            contacts, "chat," instant messaging logs,
            photographs, and correspondence;

        ○   evidence of software that would allow others to
            control the COMPUTER, such as viruses, Trojan
            horses, and other forms of malicious software, as
            well as evidence of the presence or absence of
            security software designed to detect malicious
            software;

        ○   evidence of the lack of such malicious software;

        ○   evidence of the attachment to the COMPUTER of
            other storage devices or similar containers for
            electronic evidence;

        ○   evidence of counter-forensic programs (and
            associated data) that are designed to eliminate
            data from the COMPUTER;

3

- evidence of the times the COMPUTER was used;

- passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

- documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

- contextual information necessary to understand the evidence described in this attachment.

(m)   records and things evidencing the use of the specific Internet Protocol addresses, including:

- routers, modems, and network equipment used to connect computers to the Internet;

- records of Internet Protocol addresses used;

- records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "materials," "records", "information" and "documents" include all of the described items of evidence, dated from 2008 to the present, in whatever form and by whatever means such materials, records, or documents, their drafts, or their modifications may have been created or stored.

# United States District Court

_____EASTERN_____ **DISTRICT OF** _____NEW YORK_____

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

THE PREMISES KNOWN AND DESCRIBED AS
15-13 132ND STREET, COLLEGE POINT, NEW YORK, A TAN
BRICK WAREHOUSE WITH ONE CARGO BAY AND A SIGN
ABOVE THE CARGO BAY THAT SAYS "EXCEL WHOLESALE
INC. CASH AND CARRY SUPPLIERS OF HEALTH AND BEAUTY
AID AND GENERAL MERCHANDISE 15-13" ("SUBJECT
PREMISES")

## SEARCH WARRANT

**CASE NUMBER:**

# 14-0685M

TO: **Special Agent Richard Branda** _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by    **Richard Branda** _____ who has reason to
Affiant

believe that [ ] on the person of or [X] on the premises known as (name, description and/or location)
PREMISES KNOWN AND DESCRIBED AS:
15-13 132ND STREET, COLLEGE POINT, NEW YORK, A TAN BRICK WAREHOUSE WITH ONE
CARGO BAY AND A SIGN ABOVE THE CARGO BAY THAT SAYS "EXCEL WHOLESALE INC.
CASH AND CARRY SUPPLIERS OF HEALTH AND BEAUTY AID AND GENERAL MERCHANDISE
15-13" ("SUBJECT PREMISES")

in the EASTERN _____ District of _____NEW YORK_____ there is now concealed a certain
person or property, namely (describe the person or property)

evidence, fruits and instrumentalities of violations of Title 18, U.S.C.,
Sections 371, 1341, 1349 and 2320(a) as described on Attachment B hereto.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the issuance
of this warrant.

YOU ARE HEREBY COMMANDED to search on or before    August 7, 2014 _____
Date

(not to exceed 14 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime - 6:00 A.M. to 10:00 P.M.)(at any time in the day or night as I find reasonable cause has
been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt
for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this
warrant to the duty USMJ. _____ as required by law.
United States Judge or Magistrate Judge

July 24, 2014 @  2:15 AM _____      at    Central Islip, New York _____
Date and Time Issued                                              City and State

Hon. William D. Wall _____       _____
Name and Title of Judicial Officer                                Signature of Judicial Officer

OI Case # : __LILULPS14LI0404'__

FP& F Case # : __2014470290000601__

**U.S. Immigration and Customs Enforcement**

601 W 26ᵗʰ Street, Suite 700
New York, NY 10001

Subject Name: __EXCEL Wholesale__

Subject Address: __15-13 132ⁿᵈ St.__

__College Point, NY__     Floor / Room # : _____

Safe: ____ Cabinet: ____ Credenza: ____ Desk: ____ Drawer: ____ Shelf: ____ Table: ____ Wall: ____ Other: _____

Agent#1: __T. Mulkearns__ Agent#2: __S. Gabay__     CBP Form 6051 S: _____

| QUANTITY | DESCRIPTION OF ITEM(S) |
|---|---|
| 01 | Miscellaneous office documents (19 Boxes) |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Page ___ of ___

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/Released/Seized

File # 315C-NY-16111152

On (date) August 6 2014

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☒ Seized

(Name) _____

(Street Address) _____

(City) _____

Description of Item(s): One (1) government owned Lacie Digital hard a
M/N WD10027AEX S/N LCA78C294918 containing Lacie image of
hard drive Lacie in SCI (Dell desktop PVD server ver. SN TIIFZST)
One (1) government owned Western Digital hard drive M/N WD10027AEX,
S/N LCAY00098520, containing Lacie image of hard drive Lacie
in SCI (Dell all in one comple, M/N Inspiron One 2305, S/N 8JH0H181)
One (1) government owned Lacie Digital hard drive M/N WD2001AEX
S/N LCAY00201023, containing Lacie image of hard drive Lacie
in SCI (IP desktop, M/N Inspiron 3012, S/N MXX394165D)
_____ M/N Dell Maxi
_____
_____ (E-ch S/N CZC03V051)
One (1) government owned Seagate hard drive, M/N ST1000MV1
223847A _____ (SCI Inspiron CLe
_____ SCI (desktop M/N Inspiron on 2305,
_____) and SCI (Micro Tower _____ tower Dell cpu
_____)

Received By: _____
(Signature)

Received From: _____
(Signature)

Date: _____ Time: _____

U.S. Department of Homeland Security
New York, NY 10001

OI Case # : LI92PS14LL0004

FP&F Case # : 2014472940004061

U.S. Immigration
and Customs
Enforcement

Subject Name: EXCEL Wholesale

Subject Address: 15-13 132nd St.
College Point, NY

Floor / Room # : _____

Safe: ____ Cabinet: ____ Credenza: ____ Desk: ____ Drawer: ____ Shelf: ____ Table: ____ Wall: ____ Other: _____

Agent#1: T. Mulkearn  Agent#2: S. Gabay  CBP Form 6051 S: _____

| QUANTITY | DESCRIPTION OF ITEM(S) |
|---|---|
| 01 | 21 Boxes of "Always" Counterfeit Maxi Pad 10 |
| 02 | 9 Boxes of "Always" Counterfeit Maxi Pads 10 |
| 03 | 32 Boxes of Ariel Powder Detergent (Counterfeit |
| 04 | 11 Boxes of Downy Detergent (Counterfeit) |
| 04 | 09 Boxes of Downy Ariel detergent (Counterfeit) |
| 05 | 13 Boxes of Duracell Batteries (Counterfeit) |
| 06 | 55 Boxes of Tide Downy Powder Detergent (Counterfeit |
| 07 | 10 Boxes of Vaseline (Suspected Counterfeit) |
| 08 | 14 Boxes of Vaseline (Suspected Counterfeit) |
| 09 | 4 Boxes of Extension Cords (Suspected Counterfeit |
| 10 | 1 Box of Condoms (Suspected Counterfeit) |
| 11-20 | Samples from Line Items 1-10 |
| | |
| | |
| | |
| | |
| | |

Page ___ of ___

# Exhibit "B"

1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
 2

 3     ------------------------------X
       In the Matter of the Search of
 4     THE PREMISES KNOW AND DESCRIBED
       AS 100 SWEENEYDALE AVENUE,
 5     BAYSHORE, NEW YORK, A ONE STORY
       BRICK BUILDING WITH A SIGN THAT
 6     HAS THE NUMBER "100"
       (SUBJECT PREMISES)
 7                              :  MISC. 14-1179

 8            Petitioner,
                                :  United States Courthouse
 9       -against-                 Central Islip, New York

10     THE PREMISES KNOWN AND DESCRIBED
       AS 15-13 132 STREET,
11     COLLEGE POINT, NEW YORK, A TAN
       BRICK WAREHOUSE WITH ONE CARGO
12     BAY AND A SIGN ABOVE THE CARGO
       BAY THAT SAYS "EXCEL WHOLESALE
13     INC. CASH AND SUPPLIERS OF
       HEALTH AND BEAUTY AID AND
14     GENERAL MERCHANDISE "15-13"
       (SUBJECT PREMISES)
15                              :  October 24, 2014
              Respondent.
16     ------------------------------X

17
                  TRANSCRIPT OF PROCEEDINGS
18          BEFORE THE HONORABLE ARTHUR D. SPATT
             UNITED STATES DISTRICT COURT JUDGE
19

20     APPEARANCES:
21
       For the Petitioner:     THOMAS F. LIOTTI, ESQ.
22                             600 Old Country Road
                               Garden City, NY 11530
23

24

25     (Appearances cont'd)
```

2

```
 1    For the Respondent:          LORETTA E. LYNCH
                                   United States Attorney
 2                                 100 Federal Plaza
                                   Central Islip, NY 11722
 3                                 By:   CHARLES P. KELLEY, ESQ.
                                         Assistant U.S. Attorney
 4

 5

 6

 7    Court Reporter:             OWEN WICKER, RPR
                                  100 Federal Plaza - Suite 1180
 8                                Central Islip, New York 11722
                                  (631) 712-6102
 9

10

11    Proceedings recorded by mechanical stenography;
      transcript produced by computer aided transcription
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1              (Case called.)

2              THE COURT:  Appearances, please.

3              MR. LIOTTI:  For the movant.  Thomas F.  Liotti,

4    your Honor, 600 Old Country Road, Garden City, New York.

5              MR. KELLY:  For the respondent government,

6    United States of America, Nassau County, and a variety of

7    federal agencies, Assistant U.S. Attorney Charles P.

8    Kelly.

9              THE COURT:  Yes, Mr. Liotti.

10             MR. LIOTTI:  Judge, would you mind if we

11   approach.  I know that is your usual custom and practice,

12   I know that was your practice at least the last time we

13   were here.

14             THE COURT:  No, everybody stay back there.  I

15   have a cold.

16             Please use the podium.

17             MR. LIOTTI:  First of all it's nice to see you

18   again, Judge.  I brought on an order to show cause, Judge,

19   here and originally there was a different docket number

20   when a search warrant was signed by Magistrate Wall back

21   in early August.  Since then I've been involved in

22   representing several corporate entities here.

23             The prime mover in this case is AKR, which is a

24   Bayshore based corporation but really it has contacts all

25   over the country and has been in business, Judge, for
```

4

1    approximately 30 years.  I also appear before you on a

2    second search warrant under the same original docket

3    number which was signed also by Magistrate Wall back in

4    early August involving Excel, and you can see that we have

5    basically combined both captions on the original docket

6    numbers and the Court here has given us a new docket

7    number which is as your clerk correctly stated

8    14-Misc-1179.

9              Now, as your Honor is perhaps aware, the

10   Government has just responded today with ECF papers in

11   opposition to my application.  My application here, Judge,

12   has to do with unsealing the original search warrants that

13   were signed back in early August.

14             Here is the urgency of this, Judge, and why I'm

15   asking for this somewhat extraordinary relief.  Ordinarily

16   we wait for indictments to happen but I don't believe my

17   clients are guilty of any criminal wrongdoing whatsoever.

18   Moreover, I believe that the Government did not have

19   probable cause to make the search and seizure that they

20   made here.  It is for this reason, Judge, that I am here.

21             Now, I want to say to your Honor that my clients

22   are essentially wholesalers of cosmetic products.  Most of

23   what they buy, Judge, is manufactured here in the United

24   States not by them but by legitimate corporate entities,

25   named companies that you would recognize, Judge.  They are

5

1    then sold in Europe for sale in Europe.  And my clients

2    essentially operate is what is known as a gray market.  So

3    their products are then resold to them from Europe, usally

4    to Dubai and then they sell them here in the United

5    States.

6            The reason they go through this circuitous route

7    is because with all of those wholesalers and the product

8    being sold in Europe, they still have enough margin here

9    in the United States to make a profit on a resale because

10   what it sold for in Europe is far less than what those

11   products would be sold for in the United States to

12   wholesalers here.  That's why it goes Europe first and

13   then back here.

14           Now, the issue in this case is, and this is from

15   the search warrant itself.  While I have no return on the

16   warrant, in other words, I haven't seen an affidavit from

17   an agent signing to the truth and veracity of the

18   allegations made in the supporting affidavit of the

19   warrant, but what I can see from the cover page of the

20   search warrant itself is that it is alleged that my

21   clients were involved in counterfeiting cosmetic products

22   and other products, but mostly cosmetic products.  That's

23   what we're talking about.

24           Now, my clients do not manufacture product,

25   Judge.  So counterfeiting is not something that they could

Proceedings

6

1    be engaged in.

2              However, there is also an allegation, I suppose,

3    of conspiracy under section 371 of the U.S. Code. In that

4    regard my clients are also not guilty, Judge, and there is

5    no probable cause for that either. My client's main

6    problem is that they are originally from Afghanistan, all

7    of them except for one guy who is here on a permanent visa

8    and so on, are citizens of the United States, all of them.

9              Their companies have been in business and doing

10   business exactly like this for 30 years.

11             Now what is the problem that you have before

12   you, Judge, and this is why I'm here today. I'm here

13   today because there are expiration dates on all of these

14   products.

15             Now, my clients had conceded that there was a

16   company in Valley Stream, I believe, that was raided some

17   time ago, maybe earlier this summer, I don't know the

18   exact date, and I believe that there name is Glowderma.

19   Now that company was raided and apparently they were

20   manufacturing and counterfeiting products. My clients had

21   a very, very small number of products from Glowderma which

22   they had set aside and not intended to sell and not had

23   done business with Glowderma except for that small

24   quantity. They understood that Glowderma had improperly

25   counterfeited and manufactured product.

Proceedings

7

1      So that was part of the seizure here.  But the

2   Government threw out a big net, Judge, and they took into

3   their possession all of my client's books, records, all of

4   their products at different locations so it wasn't just at

5   AKR Bayshore, but it was also for Excel Wholesale, Inc.,

6   in Queens and also they executed warrants on Manhattan

7   Wholesalers which is another subsidiary of my clients that

8   operates in Manhattan and there was a separate search

9   warrant signed by a magistrate in Manhattan and we're

10   going to do what we can do to controvert that as well.

11      So the big problem here, Judge, from our point

12   of view is there's been a tremendous damage inflicted to

13   my client's business, goodwill, and reputation in the

14   community and word of the search and seizure has spread

15   all over the industry, the cosmetic industry.

16      Named companies like Johnson and Johnson are now

17   refusing to do business with my clients because of this

18   seizure and yet they've done business with my clients for

19   30 years and there are other companies like that.

20      Our problem here is that on the products

21   themselves, there are expiration dates, meaning that they

22   can only be sold up until a certain time.  I think we only

23   have about a month left on the expiration dates.

24      Now, the Government has seized altogether I'm

25   told at various locations about $325,000 worth of product.

Proceedings

8

1        What I did, Judge, was I was trying to work this

2    out administratively if I could with the prosecutor whose

3    papers in opposition you have before me, Mr. Weiss, from

4    the Nassau County District Attorney's Office.  I haven't

5    read all of these papers because I just got them from the

6    Government and I'm grateful and I don't accuse the

7    Government of sandbagging me at all under the

8    circumstances.  But I've been dealing with Mr. Weiss since

9    August, and I provided to Mr. Weiss, I hand-delivered to

10   him invoices showing the legitimacy of all these

11   transactions that my clients have been involved in.

12        I also brought from Dubai to the United States

13   the wholesaler that my clients buy from in Dubai and he

14   was here and I volunteered to bring him into the U.S.

15   Attorney's Office and also the Nassau DA's office to show

16   them that these products are legitimate.

17        Now, what I wanted to say also is Mr. Weiss says

18   a number of things about the product here, and what your

19   Honor has to realize is that they have also seized

20   currency.

21        Now this currency in my client's business, some

22   currency comes in in cash from people who buy product from

23   them here.  That money is always deposited into the bank

24   accounts.  We have records for all of our deposits.  The

25   Government seized here, I can get the exact amount, Judge,

1   but I think in AKR's case there was over 26,000.

2           In any event they've given us notice that they

3   intend to forfeit this money.  So we've gotten those

4   notices and we've filed petitions within the 30 days

5   required under United States law for contesting the

6   seizure of cash and other profits.  We are also filing

7   notices of appeal against the Government for violation of

8   my client's civil rights and wrongful seizure of their

9   property and business.  That will happen on the state side

10  and also the federal side.

11          We've done everything we can here, Judge, to

12  cooperate with the Government.

13          Now, Mr. Weiss says in his papers, Judge, that

14  we should just wait to be indicted.  And, Judge, your

15  Honor knows that really is a foolhardy statement on the

16  part of the prosecution with all due respect.  Why is

17  that?  The reason is, Judge, that we all know, as your

18  Honor has been a federal judge now for 25 years, I think,

19  if I remember right, 1989, if I'm not mistaken  -- I could

20  be wrong about that.

21          THE COURT:  You are right.

22          MR. LIOTTI:  I'm right, okay.

23          So I followed your career with great admiration,

24  Judge.  But we all know rule 6 under the Federal Rules of

25  Criminal Procedure makes search warrants under seal a

Proceedings

10

1   matter of secrecy.  So technically we can't go behind that

2   veil of secrecy to find out what the agents may have said

3   in support of the affidavit.

4          Now if the affidavit comes before you in early

5   August and let's assume that what Mr. Weiss says in his

6   papers is absolutely correct, that this investigation has

7   been going on for some time, the seizure occurred in early

8   August on all of these entities around the United States

9   and in New York, and now two months later, Judge, more

10  than two months later we still don't have an unsealing of

11  the supporting affidavit.  So we have no idea, Judge, why

12  this product was seized, why all these records were

13  seized, why my client's business has been totally

14  disrupted.

15         I can't tell the Government when to present a

16  case to the grand jury and when not to present a case to

17  the grand jury, but given the fact that we have cooperated

18  completely here, Judge, in all respects, in all respects,

19  I mean invoices, I've brought in witnesses, I've offered

20  to have in my clients.  When have you seen me or any other

21  defense lawyers do this?  But I've offered to have my

22  clients come in and show them the books and records,

23  explain every transaction to them.

24         The parent of this corporation, the father, has

25  been in business for 30 years, Judge, and they never had a

Proceedings

11

1    problem.  One of the things we say in our papers is this.

2    The FDA  -- and frankly some private corporations may be

3    behind this whole search and seizure and also the

4    allegation of counterfeiting here because they are

5    concerned about how my clients are able to undercut

6    wholesalers here in the United States by importing from

7    Europe.  What they import from Europe, Judge, what happens

8    exactly is the following:  When goods come into this

9    country, cosmetic goods and other products, they are

10   routinely inspected by the FDA.  That happens with respect

11   to these products in issue here.  My clients tell me that

12   in all the time they've been in business, if they ever had

13   a problem with any product, the FDA would take it then and

14   there and send it back to the place of origin.  So if it

15   came from Dubai, it would go back to Dubai.  That is the

16   way it is done.

17          So what has happened here is, the Government has

18   thrown out this mess, refused to disclose what is

19   contained in the supporting affidavit of the search

20   warrants.  My client's business is disrupted.  Their cash

21   has been seized, their product has been seized and their

22   business now which has been around for thirty years is in

23   jeopardy, and it affects hundreds of people both inside

24   and outside of the family.  They are not involved in

25   terrorism, not involve in money laundering or organized

Proceedings

12

1   crime.  They are legitimate businessmen.  Their own

2   "crime" is they are from Afghanistan and I don't think

3   that is a crime, Judge.

4          Your Honor, I'm asking for the unsealing of the

5   warrants.  I'm asking for the return of any property that

6   is not illegal.  We conceded there was a small quantity of

7   property that was illegal, that was all wrapped up, that

8   wasn't going to be sold to anybody.  We told the

9   Government when they raided, you can have that, that is

10  from Glowderma, so you can take that and anything else

11  that is in question, fine, but the vast majority of the

12  merchandise here is all legitimate, as is the money,

13  Judge.

14         So that's what I have to say, your Honor, and I

15  hope that your Honor will give this very careful

16  consideration.

17         I've not had the opportunity to fully digest

18  Mr. Weiss's papers in opposition.  I will do that, Judge,

19  but I'm asking for some immediate relief here.

20         If your Honor feels that a reply by me is in

21  order I'd be happy to give you that, Judge.  I'm happy to

22  provide full disclosure, open disclosure on the legitimate

23  nature of all of this property and the cash that was

24  seized.  We're ready to cooperate.

25         We don't want to jeopardize, by the way, their

1  sealing order or their investigation, whatever it may be,

2  but my clients are not criminals and they deserve to have

3  their property back.

4         The Government can't hold on this for any

5  definite period.  It's already over two months, going on

6  three months as of early November that they've held and

7  seized my client's property.  If there is going to be an

8  indictment, let's have it already and give me back the

9  property that my clients are entitled to.

10         Thank you, Judge.

11         THE COURT:  Mr. Kelly.

12         MR. KELLY:  Thank you, Judge.

13         Judge, first as to the property that was seized,

14  the items, including the counterfeit healthcare products,

15  this case, this arises out of a case that is pending

16  before your Honor.

17         As counsel said, there was a manufacturing

18  facility of counterfeit healthcare products in Franklin

19  Square and Valley Stream.  Currently under indictment are

20  the two operators of that facility, Hamant M-u-l-l-i-c-k,

21  and Pardeep M-a-l-i-k.  Out of that indictment in the

22  continuing investigation the Government executed over 20

23  search warrants over the summer in New York, New Jersey,

24  Illinois and California.  The Government is continuing

25  this investigation into the counterfeit healthcare

Proceedings

14

1   products.

2           With regard to the petitioner here as the papers

3   of the Government indicate, the noncounterfeit property

4   that was seized which is minimal, is available for pickup,

5   as indicated in paragraph 18 of the Government's papers.

6   Otherwise the property seized from the petitioner's

7   companies is counterfeit, illegal, and will not be

8   returned.

9           As for the cash that was seized, that's now

10  under administrative forfeiture and the steps that will be

11  taken there may eventually put that before this Court or

12  it may be part of an indictment for a separate civil

13  forfeiture.

14          The steps that were taken, the seized records

15  from these companies as detailed in the Government's

16  papers, were quite careful.  There were representatives of

17  the industry, agents, counterfeit products were identified

18  and only then was a request made for invoices and

19  documents relating solely to those counterfeit documents.

20  So the documents taken were relating to the counterfeit

21  items and were selected as the declaration indicates, by

22  employees of the petitioners at the request of the agents.

23          There are no documents to be returned, as the

24  documents seized were within the scope of the search

25  warrant.

Proceedings

15

1    As for the unsealing, the Government has offered

2    the Court an alternative to a refusal to unseal or a

3    direction to unseal and is the middle ground this Court

4    followed in its Semtex decision, namely, that the

5    affidavit of affidavits in support of the search warrants

6    in question here would be unsealed at the earlier date,

7    either the date of the indictment of the individuals who

8    operate the petitioner companies or a date in May of 2015,

9    seven months from now when the Government believes that

10   the investigation will have resulted in the indictments

11   arising out of these searchs that were conducted over the

12   summer.  Even at that time the Government believed that

13   they continue to keep under seal or redact the identity of

14   any undercover agents or cooperators that would be

15   revealed in that or those affidavits

16   That is what the government believes is the

17   appropriate course with regard to the unsealing and

18   believes that unsealing at this time would interfere with

19   an ongoing investigation into not only the companies that

20   were subjects of the search warrant but also other

21   individuals and companies throughout the United States of

22   America.

23   Thank you, your Honor.

24   MR. LIOTTI:  May I respond to that, Judge?

25   THE COURT:  Yes.

Proceedings

16

1       MR. LIOTTI: Thank you, Judge.

2           Judge, not withstanding my adversary's

3   eloquence, and I really met him just for the first time

4   today, but he seems like a perfect gentleman.  However,

5   he's relying on an affidavit in opposition to my

6   application from an individual who is not here today, that

7   is, Mr. Weiss, ADA Weiss from the Nassau County District

8   Attorney's Office.

9           Now, Mr. Weiss says a number of things here in

10  his papers and I read over them very quickly, referring to

11  your Honor's case in Semtex, among other things.  And your

12  Honor in that case, where the facts are very different

13  than we have here, found that the order of sealing could

14  remain in effect even past indictment.

15          Now, this is a very, very interesting statement

16  that counsel has just made.  Why do I say that?  Because

17  we're here talking about the rules of secrecy relating to

18  search warrants, rule 6 of the Federal Rules of Criminal

19  Procedure.  But when we're talking about sealed documents

20  and a sealed record, guess what, this courtroom is wide

21  open.  One of my clients is right here.  Anybody can walk

22  in and talk about this and report on it, including

23  Mr. Kessler from Newsday, anybody could do that, unless

24  this record is sealed but right now this courtroom is wide

25  open.

Proceedings

17

1          What does the Government say to you to support

2   its claim of secrecy here?  What they say to you is that

3   your Honor has already determined Semtex, and we can have

4   this record sealed until May or until such time as there's

5   an indictment.

6          Why does the Government hide behind secrecy in a

7   case like this when they just told you, Judge, that their

8   investigation has been ongoing and when we know that

9   they've executed, they just said, 30 or more warrants

10  around the country and initiated seizures around the

11  country.

12         So isn't this a case where the Court should come

13  forward and say, okay, Government, what is it about this

14  application, this search warrant that still needs to be

15  sealed?  Why is it that you can't take photographs of the

16  merchandise?  Why can't you record the code numbers on the

17  merchandise, the sale dates and so on and give them back

18  what is legitimate?

19         Now counsel drops in that there may be

20  confidential informants here and therefore the rules of

21  secrecy should apply, but we all know that we don't

22  generally have the names of CIs or confidential informants

23  in a search warrant application that is filed by a United

24  States agent.  And the agent isn't about to spread forth

25  even in a sealed application the names of confidential

Proceedings

18

1    informants.

2           So, again, the Government's investigation as

3    they call it at this late stage is not in jeopardy in any

4    way.

5           Your Honor can do an in camera inspection, I

6    realize that is a lot of work for the Court, and I'm not

7    looking to make work for the Court, and I read your

8    decisions every day in the New York Law Journal and you

9    are a very busy court, but this is a case where your Honor

10   can come forward and parse through what they claim is

11   illegitimate and what is legitimate and give us back the

12   legitimate property.  This is not a case where they are

13   saying that this is a minimal amount of legitimate

14   property.  That's totally wrong.

15          Mr. Weiss knows better than that because I gave

16   him a list of all the invoices and I conceded which

17   property was a problem because it was acquired from

18   Glowderma, that company that counsel just referred to from

19   Valley Stream and Franklin Square.  Now that is a case

20   before you.

21          Frankly, my clients will cooperate and already

22   has cooperated with the United States government as far as

23   Glowderma is determined.  So they acquired a minimal

24   amount of property from Glowderma.  We're not aware of any

25   other illegal property and the vast amount of property

Proceedings

19

1    that was seized should be returned.  There is not reason

2    to hide behind a secrecy order of a search warrant of this

3    kind -- they can't just go on indefinitely that we have a

4    search warrant.

5         My clients shouldn't be penalized by having to

6    wait for an indictment.  I mean that's just ridiculous.

7    If the Government can look at this right now and decide

8    that my client's involvement here to the extent it existed

9    at all and having some property on their premises from

10   Glowderma, if they can determine that that is de minimis

11   or negligible and my clients can't therefore be charged

12   with conspiracy to counterfeit or any other crime, then

13   this case should be over as to them.  They shouldn't have

14   to go through forfeiture or anything else when they have

15   records to show they are legitimate business people.

16        Why do my clients have to go through petitions

17   for judicial determination on the money that was seized?

18   Why do they have to go through all of this protracted

19   process when they are legitimate people and they can show

20   that for 30 years -- for 30 years.  So the Government

21   targeted one company apparently over in Franklin Square

22   and Valley Stream.  We now know in this unsealed courtroom

23   that is the basis of their investigation.  So they are

24   trying to find whatever they can find about companies that

25   have done business with Glowderma.  Fine, you raided

Proceedings

20

1   Manhattan wholesaler, Excel Wholesalers, AKR and now you

2   know the extent of the property we got from Glowderma.

3   There it is, it's a small quantity over here, take

4   pictures of it, my clients will completely cooperate but

5   give them back their legitimate property.  There's no

6   reason to hold it.

7           Thank you, Judge.

8           MR. KELLY:  Judge, I wanted to note one thing

9   for the Court.  Mr. Weiss is actually engaged on trial in

10  Nassau county and the that's why he couldn't be present

11  this afternoon.

12          (Continued.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE COURT:  On October 15, 2014, this Court

2    granted an order to show cause from attorney Thomas Liotti

3    for a hearing as to why this Court should not unseal the

4    affidavits and supporting documents in connection with two

5    search warrants executed on July 24, 2014, by state and

6    federal agents at two facilities of his clients.

7        His client's companies are involved in the

8    cosmetic wholesale business, and the search warrants were

9    based on probable cause that they committed or attempted

10   to commit wire fraud and traffic in counterfeit goods and

11   conspiracy to commit wire fraud and trafficking in

12   counterfeit goods.

13       Of course there is a common law right of access

14   and the first amendment which is greatly on the part of

15   the plaintiff -- I don't know why I call them the

16   plaintiff.  I suppose the applicant.

17       In this kind of an application, the Court must

18   balance competing considerations where the presumption of

19   access is very important.  The Court has found the need

20   for secrecy in multistate investigations prior to

21   indictment would outweigh the presumption of public

22   access, and on a number of occasions the Courts have

23   denied motions to unseal warrants.

24       Both attorneys mentioned a previous case that I

25   decided called In The Matter of Searchs of Semtex.  In

1   that case the petitioners were companies involved in the

2   military defense whose properties were searched and

3   properties seized pursuant to a search warrant. I denied

4   the petitioner's motion to unseal the affidavit and

5   supporting documents to the search warrants finding that,

6   quote, it was reasonable to believe that the need for

7   secrecy continues in a complex multistate investigation

8   prior to indictment. This is especially true, where, as

9   here, the Government seeks to protect the identities of

10  undercover agents and persons cooperating with the

11  investigation, unquote.

12          However, in Semtex I stated also that, quote,

13  disclosure should not be postponed indefinitely, unquote.

14  And I directed that if no indictment issued in three

15  months, quote, all warrant documents are to be unsealed,

16  except as to information regarding undercover agents or

17  cooperators, unquote.

18          Subsequent courts have also denied motions to

19  unseal warrants pre-indictment under similar rationale.

20          I'm not going to get into the citations of these

21  other courts now but other courts have done so.

22          Given that this case involved a pre-indictment

23  search warrant or search warrants in an ongoing multistate

24  investigation, in the Court's view the warrant materials

25  at this time should remain sealed.

Decision

23

1          However, to ensure that the order to seal is

2     narrowly tailed, the Court as it did in Semtex, directed

3     that the affidavit be unsealed and other search warrant

4     materials revealed if an indictment is not filed in three

5     months.  However, the Government has agreed to return

6     property that is not illegal.  Of course, who determines

7     what property is not illegal?

8          I'm directing also that the Government return

9     that property within five days, noncounterfeit property.

10    It should be available for pickup within five days.

11         There has to be an end to this procedure, this

12    use of search warrants.  Fairness and constitutional

13    requirements indicate that.  It can't go on indefinitely

14    and it will not be until May of 2015.

15         So that you can submit an order, Mr. Liotti,

16    saying the things that I've mentioned, namely that

17    noncounterfeit property should be available for pickup

18    within five days.

19         Second, if there is no indictment in three

20    months, I'm going to unseal most of that property.

21         Yes.

22         MR. LIOTTI:  I just wanted to say to you, Judge,

23    it has already been three months since Magistrate Wall

24    signed this search warrant.  He signed it on July 24th.

25    Today is exactly three months, your Honor.

Decision

24

1    THE COURT:  The other cases that have determined

2    this three months also had the same situation, Mr. Liotti.

3    They didn't determine the three months from the time that

4    the search warrants were prepared but from the time of the

5    hearing.

6         That's the decision of the Court.

7         What you can do and what you have to do is

8    immediately send me an order following my decision --

9         MR. LIOTTI:  Yes, your Honor.

10         THE COURT:  -- And I'll give it additional

11    thought at that time.  After all, he just came in and I'm

12    doing this off the seat of my pants.  Do you understand

13    what that means?

14         MR. LIOTTI:  You can never do anything off the

15    seat of your pants, Judge.

16         THE COURT:  Mr. Liotti and I go back a long way,

17    Mr. Kelly.

18         MR. KELLY:  It appears to be a fact, your Honor,

19    yes.

20         THE COURT:  Mr. Liotti ran for Supervisor --

21    correct.

22         MR. LIOTTI:  For the Town of North Hempstead.

23         THE COURT:  Of the Town of North Hempstead.

24         MR. LIOTTI:  We were running mates because you

25    were running for the District Court in the Town of

Decision

25

1    Hempstead.

2              THE COURT:  And I was running as a candidate for

3    District Court of the Town of Hempstead.  Unfortunately we

4    both lost.

5              MR. LIOTTI:  You for the fourth time.

6              THE COURT:  Yes, the third time.

7              MR. LIOTTI:  Okay.

8              THE COURT:  I lost for that position three times

9    in a row.

10             And then the fourth time I ran for Supreme Court

11   and for some God unknown reason the Conservative Party

12   nominated me for Supreme Court.

13             MR. LIOTTI:  I have one anecdote --

14             THE COURT:  -- And I won because of their

15   support.

16             MR. LIOTTI:  I have one anecdote.

17             THE COURT:  I couldn't resist, Mr. Kelly,

18   telling you when I see Mr. Liotti.  It all comes back.

19             MR. LIOTTI:  You may or may not remember this

20   but in 1978, when you were about to be nominated by the

21   Democratic Party you also had a Conservative Party

22   endorsement.  When you were about to be nominated by the

23   Democratic Party and you asked me to deliver your

24   nominating speech before the judicial convention of the

25   Democratic Party, and later I couldn't do that because I

Decision

26

1  switched parties and that didn't happen, but I was always,

2  always, very honored by that, Judge, and you asking me to

3  do that and I never forgot it. I didn't do it because of

4  other circumstances but I remembered that very well,

5  Judge, and that's what has made us I think very close

6  friends over the years.

7          THE COURT: Well, I want you to know that that

8  had nothing whatsoever to do with my decision, Mr. Kelly,

9  you understand that.

10         MR. LIOTTI: You always say that.

11         MR. KELLY: The United States did not suspect

12 that it did, your Honor.

13         THE COURT: Okay.

14         Thank you very much.

15         MR. LIOTTI: Good to see you, Judge.

16         (Proceedings concluded.)

17

18

19

20

21

22

23

24

25

# Exhibit "C"

**LAW OFFICES OF**
**THOMAS F. LIOTTI, LLC**

**600 OLD COUNTRY ROAD - SUITE 530**
**GARDEN CITY, NEW YORK 11530**
--------
**TELEPHONE: (516) 794-4700**
**FACSIMILE: (516) 794-2816**
**WEBSITE: www.tliotti.com**

THOMAS F. LIOTTI✧

LUCIA MARIA CIARAVINO✱

✱Also Admitted in CT

JEAN LAGRASTA
ELLEN LUXMORE
Paralegals

February 10, 2015

U.S. Attorney, Charles Peter Kelly, Esq.
United States Attorney's Office, Eastern District of New York
610 Federal Plaza
Central Islip New York 11722-4454

Richard Branda, Special Agent
Homeland Security Investigations
3900 Veterans Memorial Highway (S-200)
Bohemia, New York 11716

     Re:    <u>**The Premises known and Described as 100 Sweeneydale Avenue, et al.**</u>
             <u>**Docket No. Misc. 14-1179**</u>

Dear Mr. Kelly and Mr. Branda:

As you know, our office represents the Petitioners with respect to the above referenced matters.

Pursuant to the Order of the Honorable Arthur D. Spatt dated January 10, 2015, if an indictment was not filed by October 29, 2014, all legitimate property, non-counterfeit property was to be released and made available for immediate pick-up by the Petitioners. To date, there has been no indictment, and yet the Petitioners have not received their legitimate property and currency in accordance with the Court's Order.

Notwithstanding repeated and good faith efforts to provide all documentation and witnesses to substantiate the legalities of the business involved, the authorities have continued to withhold the currency and property seized. Further, much of the products seized are cosmetics, personal care products, and toiletries with expiration dates thereon, which will create a significant loss. The seizure is causing a severe disruption of business and will result in a significant loss to our clients. Based on the information provided to our office, there is no basis to withhold our client's property. The Claimants, have established a possessory interest in the property and that the continued possession by the Government will cause a significant hardship, which outweighs any risk of its return.

1

✧Fellow, American Board of Criminal Lawyers

We offer below an accounting of the items taken from each of the subject entities, and what remains to be returned.

**With Respect to Excel Wholesale Distributors:**

| ITEMS TAKEN | | | |
|---|---|---|---|
| Description | qty | unit price | amount |
| Tide with Downy 400 gm | 56 | $ 23.82 | $ 1,333.92 |
| Duracell C | 14 | $ 74.35 | $ 1,040.90 |
| Vaseline 1.75 usa | 15 | $ 106.66 | $ 1,599.90 |
| Vaseline 3.75 usa | 11 | $ 87.00 | $ 957.00 |
| Extension Cords | 5 | $ 90.00 | $ 450.00 |
| Always Maxi Pads 10s | 21 | $ 21.00 | $ 441.00 |
| Always Maxi Pads 20s | 10 | $ 28.00 | $ 280.00 |
| Downey 850 | 12 | $ 16.66 | $ 199.92 |
| Trojan Magnum 48 CT | 1 | $ 360.00 | $ 360.00 |
| Ariel 400g | 33 | $ 23.00 | $ 759.00 |
| Ariel 400g with Downy | 10 | $ 23.00 | $ 230.00 |

| ITEMS RETURNED | | | |
|---|---|---|---|
| Description | qty | unit price | amonunt |
| Tide with Downy 400 gm | 0 | $ 23.82 | $ |
| Duracell C | 0 | $ 74.35 | $ |
| Vaseline 1.75 usa | 0 | $ 106.66 | $ |
| Vaseline 3.75 usa | 0 | $ 87.00 | $ |
| Extension Cords | 1 | $ 90.00 | $90.00 |
| Always Maxi Pads 10s | 21 | $ 21.00 | $441.00 |

2

| | | | |
|---|---|---|---|
| Always Maxi Pads 20s | 10 | $ 28.00 | $280.00 |
| Downey 850 | 12 | $ 16.66 | $199.92 |
| Trojan Magnum 48 CT | 1 | $ 360.00 | $360.00 |
| Ariel 400g | 33 | $ 23.00 | $759.00 |
| Ariel 400g with Downy | 10 | $ 23.00 | $230.00 |
| | | | |
| | | | $ 2,359.92 |

| ITEMS NOT RETURNED | | | | |
|---|---|---|---|---|
| Description | qty | unit price | amount | |
| Tide with Downy 400 gm | 56 | $ 23.82 | $ | 1,333.92 |
| Duracell C | 14 | $ 74.35 | $ | 1,040.90 |
| Vaseline 1.75 usa | 15 | $106.66 | $ | 1,599.90 |
| Vaseline 3.75 usa | 11 | $ 87.00 | $ | 957.00 |
| Extension Cords | 4 | $ 90.00 | $ | 360.00 |
| Always Maxi Pads 10s | 21 | $ 21.00 | $ | - |
| Always Maxi Pads 20s | 10 | $ 28.00 | $ | - |
| Downey 850 | 12 | $ 16.66 | $ | - |
| Trojan Magnum 48 CT | 1 | $360.00 | $ | - |
| Ariel 400g | 33 | $ 23.00 | $ | - |
| Ariel 400g with Downy | 10 | $ 23.00 | $ | - |
| | | | | |
| | | | $ | 5,291.72 |

3

**With Respect to AKR, Group**:

| ITEMS TAKEN | | | |
|---|---|---|---|
| Description | qty | unit price | amount |
| ADVIL BOX 50-2 | 2 | $ 7.86 | $15.72 |
| DEO AXE SPRAY 12/150ml ANARCHY | 3612 | $ 1.40 | $5,056.80 |
| DEO AXE SPRAY 12/150ml ADRENAL | 2280 | $ 1.40 | $3,192.00 |
| DEO AXE SPRAY 12/150 ML-CLICK | 21456 | $ 1.40 | $30,038.40 |
| DEO AXE SPRAY 12/150 ML-ALPHA | 23532 | $ 1.40 | $32,944.80 |
| DEO AXE SPRAY 12/150-ML AFRICA | 10656 | $ 1.39 | $14,811.84 |
| DEO AXE SPRAY 12/150 ML-EXCITE | 5580 | $ 1.38 | $7,700.40 |
| DEO AXE SPRAY 12/150 ML-ANTI-H | 10140 | $ 1.40 | $14,196.00 |
| DEO AXE SPARY 12/150ml H FEVER | 6768 | $ 1.44 | $9,745.92 |
| DEO AXE SPRAY 12/150ML-INSINCT | 11460 | $ 1.40 | $16,044.00 |
| DEO AXE SPRAY 12/150ML PEACE | 15648 | $ 1.41 | $22,063.68 |
| DEO AXE SPRAY 12/150 ML-MATURE | 2424 | $ 1.43 | $3,466.32 |
| DEO AXE SPRAY 12/150 ML-MARINE | 6132 | $ 1.37 | $8,400.84 |
| DEO AXE SPRAY 12/150 ML-MUSK | 9516 | $ 1.40 | $13,322.40 |
| DEO AXE SPRAY 12/150ml SPORT | 8796 | $ 1.40 | $12,314.40 |
| DEO AXE SPRAY 12/150ml WILD | 2220 | $ 1.40 | $ 3,108.00 |
| Axe Stick 12/2.7oz Dry Kilo | 15144 | $ 1.14 | $17,264.16 |
| DEO  AXESPRAY 12/150ML-DRY EXC | 120 | $ 1.45 | $174.00 |
| BOUNTY PAPER TOWEL | 36 | $ 1.46 | $52.56 |
| DOVE SOAP 135 GRAM | 4800 | $ 0.61 | $2,928.00 |
| DURACELL AAA2 DURALOCK IMPORT | 22368 | $ 0.55 | $12,302.40 |
| DURACELL 9V | 11040 | $ 1.12 | $12,364.80 |
| DURACELL C2 | 12576 | $ 1.53 | $19,241.28 |

| | | | |
|---|---|---|---|
| SCOTT PAPER TISSUE in Bundle | 1 | $ 18.99 | $18.99 |
| TIDE POWDER IMPORTED | 4000 | $ 1.01 | $4,040.00 |
| VASELINE PJ BLUE VITE. 12X50ML | 16956 | $ 0.65 | $11,021.40 |
| VASELINE PJ BLUE BABY. 12X50ML | 14208 | $ 0.65 | $9,235.20 |
| VASELINE PJ BLUE ALOE. 12X50ML | 11052 | $ 0.65 | $7,183.80 |

| ITEMS RETURNED | | | |
|---|---|---|---|
| description | qty | unit price | amount |
| ADVIL BOX 50-2 | | | $ - |
| DEO AXE SPRAY 12/150ml ANARCHY | | | $ - |
| DEO AXE SPRAY 12/150ml ADRENAL | | | $ - |
| DEO AXE SPRAY 12/150 ML-CLICK | | | $ - |
| DEO AXE SPRAY 12/150 ML-ALPHA | | | $ - |
| DEO AXE SPRAY 12/150-ML AFRICA | | | $ - |
| DEO AXE SPRAY 12/150 ML-EXCITE | | | $ - |
| DEO AXE SPRAY 12/150 ML-ANTI-H | | | $ - |
| DEO AXE SPARY 12/150ml H FEVER | | | $ - |
| DEO AXE SPRAY 12/150ML-INSINCT | | | $ - |
| DEO AXE SPRAY 12/150ML PEACE | | | $ - |
| DEO AXE SPRAY 12/150 ML-MATURE | | | $ - |
| DEO AXE SPRAY 12/150 ML-MARINE | | | $ - |
| DEO AXE SPRAY 12/150 ML-MUSK | | | $ - |
| DEO AXE SPRAY 12/150ml SPORT | | | $ - |
| DEO AXE SPRAY 12/150ml WILD | | | $ - |
| Axe Stick 12/2.7oz Dry Kilo | | | $ - |

| Description | qty | unit price | amount |
|---|---|---|---|
| DEO  AXESPRAY 12/150ML-DRY EXC | | | $        - |
| BOUNTY PAPER TOWEL | | | $        - |
| DOVE SOAP 135 GRAM | 4800 | $    0.61 | $    2,928.00 |
| DURACELL AAA2 DURALOCK IMPORT | | | $        - |
| DURACELL 9V | | | $        - |
| DURACELL C2 | | | $        - |
| SCOTT PAPER TISSUE in Bundle | | | $        - |
| TIDE POWDER IMPORTED | | | $        - |
| VASELINE PJ BLUE VITE. 12X50ML | 15564 | $    0.65 | $  10,116.60 |
| VASELINE PJ BLUE BABY. 12X50ML | 14208 | $    0.65 | $    9,235.20 |
| VASELINE PJ BLUE ALOE. 12X50ML | 11052 | $    0.65 | $    7,183.80 |
| | | | |
| | | | |
| | | | $ 29,463.60 |

| ITEMS NOT RETURNED | | | |
|---|---|---|---|
| Description | qty | unit price | amount |
| ADVIL BOX 50-2 | 2 | $    7.86 | $      15.72 |
| DEO AXE SPRAY 12/150ml ANARCHY | 3612 | $    1.40 | $    5,056.80 |
| DEO AXE SPRAY 12/150ml ADRENAL | 2280 | $    1.40 | $    3,192.00 |
| DEO AXE SPRAY 12/150 ML-CLICK | 21456 | $    1.40 | $  30,038.40 |
| DEO AXE SPRAY 12/150 ML-ALPHA | 23532 | $    1.40 | $  32,944.80 |
| DEO AXE SPRAY 12/150-ML AFRICA | 10656 | $    1.39 | $  14,811.84 |
| DEO AXE SPRAY 12/150 ML-EXCITE | 5580 | $    1.38 | $    7,700.40 |
| DEO AXE SPRAY 12/150 ML-ANTI-H | 10140 | $    1.40 | $  14,196.00 |
| DEO AXE SPARY 12/150ml H FEVER | 6768 | $    1.44 | $    9,745.92 |
| DEO AXE SPRAY 12/150ML-INSINCT | 11460 | $    1.40 | $  16,044.00 |

6

| Description | qty | unit price | amount |
|---|---|---|---|
| DEO AXE SPRAY 12/150ML PEACE | 15648 | $ 1.41 | $ 22,063.68 |
| DEO AXE SPRAY 12/150 ML-MATURE | 2424 | $ 1.43 | $ 3,466.32 |
| DEO AXE SPRAY 12/150 ML-MARINE | 6132 | $ 1.37 | $ 8,400.84 |
| DEO AXE SPRAY 12/150 ML-MUSK | 9516 | $ 1.40 | $ 13,322.40 |
| DEO AXE SPRAY 12/150ml SPORT | 8796 | $ 1.40 | $ 12,314.40 |
| DEO AXE SPRAY 12/150ml WILD | 2220 | $ 1.40 | $ 3,108.00 |
| Axe Stick 12/2.7oz Dry Kilo | 15144 | $ 1.14 | $ 17,264.16 |
| DEO AXESPRAY 12/150ML-DRY EXC | 120 | $ 1.45 | $ 174.00 |
| BOUNTY PAPER TOWEL | 36 | $ 1.46 | $ 52.56 |
| DOVE SOAP 135 GRAM | | | $ - |
| DURACELL AAA2 DURALOCK IMPORT | 22368 | $ 0.55 | $ 12,302.40 |
| DURACELL 9V | 11040 | $ 1.12 | $ 12,364.80 |
| DURACELL C2 | 12576 | $ 1.53 | $ 19,241.28 |
| SCOTT PAPER TISSUE in Bundle | 1 | $ 18.99 | $ 18.99 |
| TIDE POWDER IMPORTED | 4000 | $ 1.01 | $ 4,040.00 |
| VASELINE PJ BLUE VITE. 12X50ML | 1392 | $ 0.65 | $ 904.80 |
| VASELINE PJ BLUE BABY. 12X50ML | | | $ - |
| VASELINE PJ BLUE ALOE. 12X50ML | | | $ - |

## With Respect to Manhattan Wholesalers, Inc:

| ITEMS TAKEN | | | |
|---|---|---|---|
| Description | qty | unit price | amount |
| ALLERGY RELIEF BOX 30S | 12 | $ 3.00 | $ 36.00 |
| AXE AFTERSHAVE 100ML | 16 | $ 24.00 | $ 384.00 |
| AXE SHAMPOO 12 OZ | 17 | $ 23.00 | $ 391.00 |
| CHAPSTICK ORIG ASSTD 28CT | 216 | $ 26.00 | $ 5,616.00 |

| | | | |
|---|---|---|---|
| CHAPSTICK REG REFILL24S | 13 | $ 24.00 | $ 312.00 |
| COLGATE TOOTHBRUSH ZIGZAG | 264 | $ 3.24 | $ 855.36 |
| CONRX NIGHT TIME 25CT | 40 | $ 3.25 | $ 130.00 |
| CONRX PAIN RELIEF 25CT | 20 | $ 2.25 | $ 45.00 |
| CREST TRAVEL PACK W/TB | 24 | $ 3.75 | $ 90.00 |
| DAYQUIL 25/2 BOX | 480 | $ 8.24 | $ 3,955.20 |
| DOVE SOAP 135GRAM 48CT | 80 | $ 30.00 | $ 2,400.00 |
| DURACELL 9V KOREAN | 3984 | $ 1.15 | $ 4,581.60 |
| DURACELL AA2 CHINESE/ENG | 5664 | $ 0.58 | $ 3,285.12 |
| DURACELL AA4 CHINESE/ENG | 6528 | $ 1.15 | $ 7,507.20 |
| DURACELL AAA2 CHINESE/ENG | 4800 | $ 0.58 | $ 2,784.00 |
| DURACELL C2 KOREAN | 720 | $ 1.53 | $ 1,101.60 |
| ED HARDY LIGHTER | 60 | $ 55.80 | $ 3,348.00 |
| ED HARDY SCENTED FRESHNER | 24 | $ 16.80 | $ 403.20 |
| GILLETTE GOODNEWS 3CT | 84 | $ 9.25 | $ 777.00 |
| JJ BABY LOTION 100ML | 40 | $ 11.88 | $ 475.20 |
| JJ BABY OIL 14OZ | 2 | $ 35.00 | $ 70.00 |
| JJ BABY OIL 3 OZ | 16 | $ 16.50 | $ 264.00 |
| JJ BABY POWDER 100 GRAM | 36 | $ 6.50 | $ 234.00 |
| NYQUIL BOX 25/2 | 540 | $ .8.24 | $ 4,449.60 |
| PAIN PM RELIEF 34S | 180 | $ 4.37 | $ 786.60 |
| PONDS CREAM 12/3.9OZ | 4 | $ 30.00 | $ 120.00 |
| SCOPE GREEN 1.5OZ | 24 | $ 4.25 | $ 102.00 |
| SCOPE GREEN 250ML | 27 | $ 18.00 | $ 486.00 |
| STOMACH RELIEF 30S | 48 | $ 3.30 | $ 158.40 |

| | | | |
|---|---|---|---|
| TIDE DET. POWDER 30/400GRAM | 19 | $ 23.25 | $ 441.75 |
| TRIDENT GUM | 180 | $ 6.75 | $ 729.00 |
| TROJAN CONDOM | 72 | $ 16.58 | $ 1,193.76 |
| VASELINE 1.75OZ USA | 24 | $ 9.36 | $ 224.64 |
| VASELINE INT CARE 100ML | 18 | $ 8.00 | $ 144.00 |
| VASELINE LIP THERAPY | 72 | $ 8.63 | $ 621.36 |
| VICKS VAPORUB  12/12 GRAM | 180 | $ 6.60 | $ 1,188.00 |
| VICKS VAPORUB 100GR USA | 6 | $ 60.00 | $ 360.00 |
| VICKS VAPORUB 25GRAM | 216 | $ 19.00 | $ 4,104.00 |
| ZQUIL LIQUID 6OZ | 58 | $ 43.96 | $ 2,549.68 |
| | | | |
| | | | |
| | | TOTAL | $56,704.27 |

| ITEMS RETURNED | | | |
|---|---|---|---|
| Description | qty | unit price | amount |
| ALLERGY RELIEF BOX 30S | 12 | $ 3.00 | $ 36.00 |
| AXE AFTERSHAVE 100ML | | | |
| AXE SHAMPOO 12OZ | 17 | $ 23.00 | $ 391.00 |
| CHAPSTICK ORIG ASSTD 28CT | 216 | $ 26.00 | $ 5,616.00 |
| CHAPSTICK REG REFILL24S | | | |
| COLGATE TOOTHBRUSH ZIGZAG | 264 | $ 3.24 | $ 855.36 |
| CONRX NIGHT TIME 25CT | 40 | $ 3.25 | $ 130.00 |
| CONRX PAIN RELIEF 25CT | | | |
| CREST TRAVELPACK W/TB | 24 | $ 3.75 | $ 90.00 |
| DAYQUIL BOX 25S | 480 | $ 8.24 | $ 3,955.20 |
| DOVE SOAP 135 GRAM 48CT | 80 | $ 30.00 | $ 2,400.00 |
| DURACELL 9V KOREAN | | | |
| DURACELL AA2 CHINESE/ENG | | | |

9

| | | | |
|---|---|---|---|
| DURACELL AA4 CHINESE/ENG | | | |
| DURACELL AAA2 CHINESE/ENG | | | |
| DURACELL C2 KOREAN | | | |
| ED HARDY LIGHTHER | 60 | $ 55.80 | $ 3,348.00 |
| ED HARDY SCENTED FRESHNER | | | |
| GILLETTE GOODNEWS 3CT | | | |
| JJ BABY LOTION 100ML | 40 | $ 11.88 | $ 475.20 |
| JJ BABY OIL 14 OZ | 2 | $ 35.00 | $ 70.00 |
| JJ BABY OIL 3OZ | 8 | $ 16.50 | $ 132.00 |
| JJ BABY POWDER 100 GRAM | 36 | $ 6.50 | $ 234.00 |
| NYQUIL BOX 25/2 | 540 | $ 8.24 | $ 4,449.60 |
| PAIN PM RELIEF 34S | 180 | $ 4.37 | $ 786.60 |
| PONDS CREAM 12/3.9OZ | | | |
| SCOPE GREEN 1.5OZ | | | |
| SCOPE GREEN 250ML | | | |
| STOMACH RELIEF 30S | 48 | $ 3.30 | $ 158.40 |
| TIDE DET. POWDER 30/400GRAM | | | |
| TRIDENT GUM | 108 | $ 6.75 | $ 729.00 |
| TROJAN PLEASURE PACK | 72 | $ 16.58 | $ 1,193.76 |
| VASELINE 1.75OZ USA | | | |
| VASELINE INT CARE 100ML | | | |
| VASELINE LIP THERAPY | 72 | $ 8.63 | $ 621.36 |
| VICKS VAPORUB 12/12 GRAM | 180 | $ 6.60 | $ 1,188.00 |
| VICKS VAPORUB 100 GM USA | 6 | $ 60.00 | $ 360.00 |
| VICKS VAPORUB 25GRAM | | | |
| ZQUIL LIQUID 6 OZ | 58 | $ 43.96 | $ 2,549.68 |
| | | | |
| | | | |
| | | TOTAL | $ 29,769.16 |

| ITEMS NOT RETURNED | | | | |
|---|---|---|---|---|
| description | qty | unit price | amount | |
| ALLERGY RELIEF BOX 30S | | | $ | - |
| AXE AFTERSHAVE 100ML | 16 | $ 24.00 | $ | 384.00 |
| AXE SHAMPOO 12OZ | | | $ | - |
| CHAPSTICK ORIG ASSTD 28CT | | | $ | - |
| CHAPSTICK REG REFILL24S | 13 | $ 24.00 | $ | 312.00 |
| COLGATE TOOTHBRUSH ZIGZAG | | | $ | - |
| CONRX NIGHT TIME 25CT | | | $ | - |
| CONRX PAIN RELIEF 25CT | 20 | $ 2.25 | $ | 45.00 |
| CREST TRAVELPACK W/TB | | | $ | - |
| DAYQUIL BOX 25S | | | $ | - |
| DOVE SOAP 135 GRAM 48CT | | | $ | - |
| DURACELL 9V KOREAN | 3984 | $ 1.15 | $ | 4,581.60 |
| DURACELL AA2 CHINESE/ENG | 5664 | $ 0.58 | $ | 3,285.12 |
| DURACELL AA4 CHINESE/ENG | 6528 | $ 1.15 | $ | 7,507.20 |
| DURACELL AAA2 CHINESE/ENG | 4800 | $ 0.58 | $ | 2,784.00 |
| DURACELL C2 KOREAN | 720 | $ 1.53 | $ | 1,101.60 |
| ED HARDY LIGHTHER | | | $ | - |
| ED HARDY SCENTED FRESHNER | 24 | $ 16.80 | $ | 403.20 |
| GILLETTE GOODNEWS 3CT | 84 | $ 9.25 | $ | 777.00 |
| JJ BABY LOTION 100ML | | | $ | - |
| JJ BABY OIL 14 OZ | | | $ | - |
| JJ BABY OIL 3OZ | | | | |
| JJ BABY POWDER 100 GRAM | | | $ | - |
| NYQUIL BOX 25/2 | | | $ | - |
| PAIN PM RELIEF 34S | | | $ | - |

| | | | | |
|---|---|---|---|---|
| PONDS CREAM 12/3.9OZ | 4 | $ 30.00 | $ | 120.00 |
| SCOPE GREEN 1.5OZ | 24 | $ 4.25 | $ | 102.00 |
| SCOPE GREEN 250ML | 27 | $ 18.00 | $ | 486.00 |
| STOMACH RELIEF 30S | | | $ | - |
| TIDE DET. POWDER 30/400GRAM | 19 | $ 23.25 | $ | 441.75 |
| TRIDENT GUM | | | $ | - |
| TROJAN PLEASURE PACK | | | $ | - |
| VASELINE 1.75OZ USA | 24 | $ 9.36 | $ | 224.64 |
| VASELINE INT CARE 100ML | 18 | $ 8.00 | $ | 144.00 |
| VASELINE LIP THERAPY | | | $ | - |
| VICKS VAPORUB 12/12 GRAM | | | $ | - |
| VICKS VAPORUB 100 GM USA | | | $ | - |
| VICKS VAPORUB 25GRAM | 216 | $ 19.00 | $ | 4,104.00 |
| ZQUIL LIQUID 6 OZ | | | $ | - |
| | | | $ | - |
| | | | $ | - |
| | | TOTAL | $ | 26,935.11 |

We anticipate that you will communicate immediately with our office to arrange for the for the return of this property.

Thank you for your immediate attention to this matter.

Sincerely,

Thomas F. Liotti

# Exhibit "D"

# HOLDER LIMITS POLICE ON SEIZED ASSETS

*The Washington Post*

WASHINGTON — Attorney General Eric Holder yesterday barred local and state police from using federal law to seize cash, cars and other property without proving that a crime occurred.

Holder's action represents the most sweeping check on police power to confiscate personal property since the seizures began three decades ago as part of the war on drugs.

Since 2008, thousands of local and state police agencies have made more than 55,000 seizures of cash and property worth $3 billion under a civil asset forfeiture program at the Justice Department called Equitable Sharing.

The program has enabled local and state police to make seizures and then have them "adopted" by federal agencies, which share in the proceeds. It allowed police departments and drug task forces to keep up to 80 percent of the proceeds of the adopted seizures, with the rest going to federal agencies.

Holder's decision allows some limited exceptions, including illegal firearms, ammunition, explosives and property associated with child pornography, a small fraction of the total. This would eliminate virtually all cash and vehicle seizures made by local and state police from the program.

While police can continue to make seizures under their own state laws, the federal program was easy to use and required most of the proceeds from the seizures to go to local and state police departments. Many states require seized proceeds to go into the general fund.

Holder's decision follows a Washington Post investigation published in September that found that police have made cash seizures worth almost $2.5 billion from motorists and others without search warrants or indictments since the terrorist attacks of Sept. 11, 2001.

Police spent the seizure proceeds with little oversight, in some cases buying luxury cars, high-powered weapons and military-grade gear such as armored cars, according to an analysis of Justice Department data obtained through Freedom of Information Act requests.