**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
IN RE THE PREMISES KNOWN AND
DESCRIBED AS 100 SWEENEYDALE
AVENUE, BAYSHORE, NEW YORK, A ONE     **ORDER**
STORY BRICK BUILDING WITH A SIGN      14-MC-1179 (ADS)
THAT HAS THE NUMBER "100" (SUBJECT
PREMISES)


                    and


THE PREMISES KNOWN AND DESCRIBED
AS 15-13 132 STREET, COLLEGE POINT,
NEW YORK A TAN BRICK
WAREHOUSEWITH ONE CARGO BAY AND
A SIGN ABOVE THE CARGO BAY THAT
SAYS "EXCEL WHOLESALE INC. CASH
AND SUPPLIERS OF HEALTH AND
BEAUTY AID AND GENERAL
MERCHANDISE 15-13"
(SUBJECT PREMISES)


------------------------------------------------------------X
**APPEARANCES:**

**The Law Offices of Thomas F. Liotti**
*Attorneys for the Petitioners and Movants*
600 Old Country Road, Suite 530
Garden City, NY 11530

**The United States Attorney's Office**
*Attorneys for the Respondent*
610 Federal Plaza
Central Islip, NY 11722
        By: Charles P. Kelly, Assistant United States Attorney

**SPATT, District Judge**.

        This cases arises from an August 6, 2014 seizure by the United States ("the

Government") of currency and allegedly counterfeit products located in warehouses owned by

AKR Corporation ("AKR"), Wholesalers Bronx Corp. ("Wholesalers"), and Excel Whole Sale

Distributors ("Excel").  The search and seizure was made pursuant to three search warrants (the

"Search Warrants") issued on July 24, 2014 and August 1, 2014 by United States Magistrate

Judge William D. Wall of the Eastern District of New York and United States Magistrate Judge

Debra Freeman of the Southern District of New York.

On October 14, 2014, AKR, Wholesalers, Excel, and their owners and employees

(collectively, the "Petitioners") commenced this miscellaneous action by petitioning the Court

for an emergency order to show cause as to why the Court should not enter an order directing the

Government to return the property and currency seized from the Petitioners' warehouses on

August 6, 2014.

On January 10, 2015, the Court issued an order (the "January 10, 2015 Order") directing

the Government to unseal the materials supporting the Search Warrants and to "release and make

available" "all legitimate, non-counterfeit property."

Presently before the Court is a motion by the Petitioners for (i) an evidentiary hearing to

determine whether the property seized by the Government in executing the Search Warrants is

counterfeit; (ii) a probable cause hearing to determine the legality of the Government's seizure;

and (iii) an order of contempt against the Government for allegedly failing to adhere to the

January 10, 2015 Order.

For the reasons set forth below, the Court denies the motion by the Petitioners and directs

the Clerk of the Court to close this case.

## I. BACKGROUND

As is made clear below, this case has a complex procedural history involving three

overlapping proceedings concerning the Petitioners' seized property — namely, an

administrative proceeding, an emergency relief proceeding, and a civil forfeiture proceeding.

The Court notes that the facts recited below are not intended to resolve factual disputes in the proceedings parallel to the instant case.

## A. The Parties

The Petitioner Excel is a cosmetics distribution company whose place of business is located in College Point, New York.  (Compl., 15-cv-2678, at ¶ 8.)

The Petitioner AKR is a cosmetics distribution company whose place of business is located in Bay Shore, New York.  (Id. at ¶ 9.)

The Petitioner Manhattan is a cosmetics distribution company whose place of business is located in the Bronx, New York.  (Id. at ¶ 10.)

## B. The Investigation of Malik and Mullick

On March 6, 2014, investigators with the Nassau County District Attorney's Office ("NCDA") executed six search warrants at locations associated with three companies: Best Price Traders NA, Inc. ("Best Price"), Universal Price, Inc. ("Universal Price"), and Glow Derma, Inc. ("Glow Derma" and collectively, the "Wholesale Companies").  (Compl., 15-cv-2678, at ¶¶ 12–13.)  At these locations, the Government allegedly recovered tens of thousands of units of counterfeit health and beauty products.  (Id.)

On March 21, 2014, the NDCA Office referred the case against Hamat Mullick ("Mullick") and Pardeep Malik ("Malik"), who owned and operated the Wholesale Companies, to the United States Attorney's Office for the Eastern District of New York.  (Id. at ¶ 20.)

On July 16, 2014, a grand jury in Central Islip returned an indictment charging Mullick and Malik with five counts of: (i) conspiracy to traffic in counterfeit goods, 18 U.S.C. § 371; (ii) trafficking in counterfeit goods, 18 U.S.C. § 2320(a)(1); (iii) trafficking in counterfeit labels and

packaging, 18 U.S.C. § 2320(a)(2); (iv) tracking in counterfeit drugs, 18 U.S.C. § 2320(a)(4); and (v) conspiracy to commit mail fraud, 18 U.S.C. § 1349. (<u>Id.</u> at ¶ 22.)

## C. The Search Warrants

Based on reviewing records and interviewing employees of Malik and Mullick, federal investigators identified Excel, AKR, and Manhattan as three of several other distributors who allegedly purchased counterfeit products from Malik and Mullick. (<u>Id.</u> at ¶ 24.)

On July 24, 2014, Judge Wall issued two search warrants under seal authorizing the search and seizure of properties located at 100 Sweeneydale Avenue, Bay Shore, New York, and 115-13 132nd Street, College Point, New York. (Liotti Decl. Dkt. No. 10, at ¶ 2.) The properties are owned by AKR and Excel, respectively. (<u>Id.</u>)

On August 1, 2014, Judge Freeman signed a third search warrant for a premises owned by Manhattan in the Bronx, New York. (Compl., 15-cv-2678, at ¶ 35.)

The Search Warrants were issued based on findings by Judge Wall and Judge Freeman that there was probable cause to believe that the buildings contained evidence, fruits, and instrumentalities of counterfeit goods and mail fraud. (Liotti Decl., Dkt. No. 10, Ex. A.)

On August 6, 2014, agents of the United States Department of Homeland Security, Immigration and Customs Enforcement, and Homeland Security Investigations ("HSI") executed the Search Warrants. (Compl., 15-cv-2678, at ¶ 36.) HSI seized $46,171 in cash, merchandise, and certain business records from the Petitioners' warehouses. (Branda Aff. at ¶ 15; Liotti Decl., Dkt. No. 10, at ¶ 4.)

**D. The Procedural Background**

**1. CAFRA**

As the pendency of administrative proceedings is a central issue in the present motion, the Court will provide background on the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983.

Under CAFRA the government can commence "nonjudicial civil forfeiture proceedings," "by send[ing] written notice to interested parties . . . in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure." 18 U.S.C. § 983(a)(1)(A)(i).

After receiving notice, an interested party may file "a claim with the appropriate official after the seizure" "not later than the deadline set forth in the personal notice letter . . . except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure." 18 U.S.C. § 983(a)(1)(F).

In order to be valid, a claim must "(i) identify the specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury." 18 U.S.C. § 983(a)(2)(B).

Within 90 days of a valid claim being filed, the Government must file a civil complaint for forfeiture "in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint." 18 U.S.C. § 983(a)(3)(A).

Significantly, in a civil forfeiture proceeding, the Government must show**,** by a preponderance of the evidence**,** that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Moreover, if the Government's theory of forfeiture is that the property "was used to commit or

facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C.A. § 983(c)(3).

### 2. The Present Case

On September 23, 2014, the Office of Customs and Border Protection, Department of Homeland Security ("CBP") commenced an administrative forfeiture proceeding (the "CBP Administrative Proceeding") under CAFRA against the property it seized from the Petitioners' warehouses by sending notice to all potential known claimants. (Compl., 15-cv-2678, at ¶ 38; Gov't Letter Br. at 2.)

On October 14, 2014, the Petitioners commenced this action by filing a petition requesting an Order to Show Cause as to why the Court should not direct the Government to (i) release the property of the Petitioners that it seized and (ii) unseal the affidavits supporting the Search Warrants issued by Judge Wall. (Dkt. No. 1.)

On October 15, 2014, the Court issued an Order to Show Cause and scheduled a hearing for October 24, 2014. (Dkt. No. 2.)

On October 24, 2014, the Court held a hearing regarding the Petitioners' requests. At the conclusion of the hearing, the Court issued an order directing the Government to unseal the affidavits supporting the Search Warrants within three months if the Government had not issued an indictment against the Petitioners. The Court further ordered that by October 29, 2014, the Government release and make available to the Petitioners "all legitimate, non-counterfeit property." (October 24, 2014 Hearing Tr. 23:1–24:5.)

On October 28, 2014, the Government alleges that the Petitioners filed a CAFRA election notice of claim form in the CBP Administrative Proceeding requesting that "CBP consider my

6

petition administratively before forfeiture proceedings are initiated." (Gov't Letter Br. at 2; see also Apr. 30, 2015 Tr. 26:25–27:6.) The Petitioners do not appear to dispute that they filed such a notice but claim that their petition related to the currency seized by CBP and not the merchandise. (Pets.' Letter Mot. at 3.)

The Government alleges that the form submitted by the Petitioners to CBP did not contain sufficient information to be considered a valid claim under CAFRA. (Apr. 30, 2015 Tr. 27:1–15.) As such, CBP allegedly requested more information from the Petitioners. (Id.)

On January 10, 2015, the Court issued the January 10, 2015 Order memorializing the Court's directives from the October 24, 2014 hearing. (Dkt. No. 9.)

On February 13, 2015, the Petitioners filed Supplemental Petitions in the CBP Administrative Proceeding in response to CBP's request for further information. (October 24, 2014 Hearing Tr. 23:1–24:5.) According to the Government, CBP treated the supplemental information submitted by the Petitioners as sufficient to constitute a claim under CAFRA. (Id.) As such, under CAFRA, the Government had until May 13, 2015 to file a civil complaint for forfeiture against the property seized from the Petitioners. 18 U.S.C. § 983(a)(3)(A).

On April 13, 2015, the Petitioners filed a second petition requesting an Order to Show Cause **as to** why the Court should not issue an order holding the Government in contempt for failing to comply with the January 10, 2015 Order and directing the Government to return all legitimate, non-counterfeit property and related currency. (Dkt. No. 10.) Regarding the Petitioners' request, the Court scheduled a hearing for April 22, 2015. (Id.)

On April 21, 2015, the Government responded to the Order to Show Cause by filing an affidavit by Richard Branda ("Branda"), a Special Agent with the HSI. Branda asserted that the Government complied with the terms of the January 10, 2015 Order by unsealing the affidavits

associated with the Search Warrants and making available to the Petitioners all property it considered to be non-counterfeit.  (Branda Aff. at ¶¶ 4–7.)  Further, Branda represented that the property not returned to the Petitioners was appraised by CBP officials to be counterfeit.  (Id. at ¶¶ 10–12.)  To that end, Branda attached forms issued by CBP attesting to the alleged counterfeit nature of the property that the Government did not release to the Petitioners.  (Branda Aff. Ex. B.)

On April 22, 2015, the Court held a hearing to discuss the Petitioners' requests.  At that hearing, the Court scheduled a second hearing for April 30, 2015 to permit the Petitioners time to respond to the papers filed by the Government.

In response to the Branda Affidavit, on April 29, 2015, the Petitioners filed an affidavit by Magid Rashidzada ("Rashidzada"), representing that the merchandise that the Government continues to hold is legitimate and not counterfeit.  (Rashidzada Aff. at ¶ 5.)  In support of this contention, the Petitioners attached invoices, which they contend provide evidence that the products were purchased from "legitimate company[ies] and brand owner[s] of the products" at issue.  (Id.; see also Rashidzada Aff., Exs. A–D.)

 Further, Rashidzada stated that the "search and seizure" has caused a "ripple effect . . . in that businesses, both foreign and domestic, have ceased to do business with our companies because they have learned of the search and seizure." (Rashidzada Aff. at ¶ 13.)  In addition, he stated that "[m]uch of the products [seized] are cosmetics and toiletries with expirations dates . . . . Accordingly, we are being damaged with each passing day that our products are not returned." (Id.)

On April 30, 2015, the Court held a second hearing with respect to the Petitioners'

request for a contempt order against the Government.  At the hearing, Thomas F. Liotti, Esq

("Liotti"), counsel for the Petitioners, described his request for relief as follows:

> I'm not asking for summary contempt, let's hold a hearing on this where the
> Government can come forward and they can show, if they can, a good-faith basis
> for holding on to this property and we'll proceed witnesses that will show did not
> comply with the Court order and a wanton disobedience of the Court's orders and
> we are entitled to our property back now in a judicial proceeding and that's the
> law and that's what the Government should be required to comply with, not this
> nonsense about this being a frivolous proceeding and so forth. Let's have a
> hearing, not summary contempt.

(<u>Id.</u> at Tr. 21:6–20.)

In response, Assistant United States Attorney Charles P. Kelly ("Kelly"), counsel for the

Government, represented that under binding Second Circuit authority, the Court lacks the

authority to hold an evidentiary hearing to determine the counterfeit nature of property seized by

the Government during the pendency of the CBP Administrative Proceeding.  (<u>Id.</u> at Tr. 28:11–

24.)

At the conclusion of the April 30, 2015 proceeding, over the objection of the

Government, the Court scheduled an evidentiary hearing for May 28, 2015 to resolve the

question of whether the Petitioners' property seized by the Government is counterfeit.  (<u>Id.</u> at Tr.

31:1–11.)  However, as the jurisdictional issue raised by the Government had not been raised

previously, the Court permitted the Government to submit a letter explaining its jurisdictional

argument by May 11, 2015.  (<u>Id.</u> at Tr. 35:1–12.)

On May 11, 2015, the Government filed a letter in support of its argument that the Court

lacks jurisdiction to determine the counterfeit nature of the property seized by the Government.

(Dkt. No. 21.)

On May 12, 2015, the Government commenced an *in rem* action, <u>United States v. Fifty-Five Boxes of Tide Down Powder</u>, *et al*, 15-cv-2678 (the "Civil Forfeiture Action"), to forfeit and condemn the currency and merchandise seized by the Government after executing the Search Warrants. In that regard, the Government filed a verified complaint alleging that the seized property is subject to forfeiture pursuant to 18 U.S.C. § 2323. (Compl., 15-cv-2678, at ¶¶ 48–49.) The case was originally filed before United States District Court Judge John Gleeson. However, on May 13, 2015, it was reassigned from Judge Gleeson to this Court because it is related to the present action.

On May 12, 2015, in the present action, the Court issued an order cancelling the evidentiary hearing previously scheduled for May 28, 2015 until the Court resolves the question of whether it has jurisdiction to hold such a hearing. (Dkt. No. 23.) The Court further permitted the Petitioners to file a response to the letter brief by the Government on or before May 20, 2015. (<u>Id.</u>)

In response, on May 20, 2015, the Petitioners filed a letter brief contending that they are entitled under New York law to a hearing to determine whether: (i) the property that has not been released to the Petitioners is counterfeit; (ii) the Government had probable cause to seize the property of the Petitioners; and (iii) the Government should be held in contempt for failing to return what they contend to be legitimate non-counterfeit property. (The Pets.' Letter Br. at 6.) The Court will address each argument in turn.

## II. DISCUSSION

### A. As to the Court's Jurisdiction

Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 41(g) states, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may

move for the property's return.  The motion must be filed in the district where the property was seized."

Although the Petitioners do not refer to Fed. R. Crim. P. 41(g) in their original motion, the Court will construe their motion for the return of their property as one made under Rule 41(g).

The Court further notes that the Government seized property from the Petitioners' warehouses in Bay Shore, College Point, and the Bronx.  (Compl., 15-cv-2678, at ¶ 8–10.)  As noted above, Rule 41(g) requires that a motion be filed "in the district where the property was seized."  Therefore, technically, the Petitioners' motion is only proper with respect to the property seized by the Government in Bay Shore and College Point, which are located in this District, and not the property seized in the Bronx, which is located in the Southern District of New York.  However, the Government appears to consent to addressing the property seized in the Bronx together with the property seized in Bay Shore and College Point.  (Branda Aff. at ¶ 4.)  Thus, the Court will address the Petitioners' motion for the return of the property seized by the Government at its three warehouses located in Bay Shore, College Point, and the Bronx.

Where, as here, the movant has not been indicted, relief under Rule 41(g) is equitable in nature.  See De Almeida v. United States, 459 F.3d 377, 379-80 (2d Cir. 2006) ("'[W]here no criminal proceedings against the movant are pending or have transpired,' relief under Rule 41(g) is equitable in nature.") (quoting Mora v. United States, 955 F.2d 156, 158 (2d Cir. 1992)) (alteration in original).  That means that an order for the return of property under Rule 41(g) "'is available only when there is [1] no adequate remedy at law and [2] the equities favor the exercise of jurisdiction.'"  United States v. Zaleski, 686 F.3d 90, 92 (2d Cir. 2012) (quoting De Almeida, 459 F.3d at 382).

Moreover, the Second Circuit has stated that "[j]urisdiction under Rule 41 'is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials.'" De Almeida, 459 F.3d at 382 (quoting Application of Campola, 543 F. Supp. 115, 117 (N.D.N.Y. 1982)); see also United States v. Huggins, No. 13-CR-00155 (SHS) (SN), 2013 WL 1728269, at *3 (S.D.N.Y. Mar. 22, 2013) report and recommendation adopted, No. 13 CR. 155 (SHS), 2013 WL 1736466 (S.D.N.Y. Apr. 11, 2013) ("[E]quitable jurisdiction under Rule 41(g) 'is only appropriate in exceptional cases where equity demands intervention.'") (quoting parenthetically United States v. Dean, 80 F.3d 1535, 1542 (11th Cir. 1996)).

Here, the Government asserts the Court lacks jurisdiction to hold an evidentiary hearing because the CBP Administrative Proceeding and the Civil Forfeiture Proceeding provide the Petitioners with an adequate remedy at law to determine whether the seized merchandise is counterfeit. The Court agrees.

The Government is correct that courts in this Circuit have dismissed motions for the return of property based on the existence of parallel civil forfeiture proceedings, such as the one commenced in this action. (The Gov't Letter Br. at 4–5.) In that regard, the Court finds De Almeida v. United States, 459 F.3d 377 (2d Cir. 2006) to be instructive. There, the Government seized the bank accounts of the petitioners pursuant to a criminal seizure warrant based on allegations that a bank employee was using the account in an illegal money laundering business. Id. at 379. Although the petitioners were never indicted, the bank employee pled guilty to five counts of money laundering and tax evasion charges. Id. Shortly thereafter, in a criminal forfeiture proceeding, a United States District Court judge in the District of New Jersey entered a preliminary order of forfeiture of the funds from the seized bank accounts. Id. A year later, the

petitioners commenced a separate civil proceeding in the Southern District of New York and moved pursuant to Fed. Crim. P. 41(g) for the return of funds seized from their accounts.  Id.

The Second Circuit held that the district court did not abuse its discretion in dismissing the 41(g) motion because it found that the petitioners had an adequate remedy of law in the criminal forfeiture proceeding.  Id. at 383.  In so doing, the court noted that although it had "never previously reviewed the dismissal of a Rule 41(g) motion in favor of a pending criminal forfeiture proceeding[,] . . . we have upheld dismissal where the government had commenced a civil forfeiture proceeding."  Id. at 382.  The court further noted that "[o]ther Circuits have similarly held that a pending administrative or civil forfeiture proceeding affords an adequate remedy at law and thereby justifies dismissal of the Rule 41(g) motion."  Id. (collecting cases).

The court in De Almeida found that the analogy between civil and criminal forfeiture may be "imperfect" because in the criminal context, unlike in the civil context, claimants may have to wait "month or years" before criminal charges are resolved.  Id.  However, the court found the potential for undue delay did not exist with respect to the petitioners' claims because the criminal forfeiture proceeding had already been commenced and concluded a year prior to the plaintiff making a Rule 41(g) motion in the Southern District of New York.  Id.  As such, the court found that "[i]n light of the remedy available to Petitioners in New Jersey, the harm asserted by them, and the serious risk of duplicative proceedings and conflicting results, we see no abuse of discretion in the district court's dismissal."  Id. at 383.

The Second Circuit in De Almeida cited with approval In Re One 1987 Jeep Wrangler Automobile, 972 F.2d 472, 475 (2d. Cir.1992), a case with facts similar to the instant case.  In that case, the Government seized the petitioner's car after he pled guilty to marijuana offenses. The petitioner then moved in the United States District Court in Vermont for the return of his

car.  Id.  After the petitioner filed his motion, the Government initiated administrative forfeiture

proceedings against the car by serving timely notice on the defendant's attorney.  In Re One

1987 Jeep Wrangler Automobile, 972 F.2d at 476.  The Second Circuit affirmed the decision by

the district court dismissing the Rule 41 motion for lack of jurisdiction.  Id. at 479.  The court

reasoned that the "administrative forum afforded the claimant the opportunity to raise all

objections to the seizure and the lack of a judicial remedy deprived him of nothing."  Id.; see also

United States v. Huggins, No. 13-CR-00155 SHS SN, 2013 WL 1728269, at *3 (S.D.N.Y. Mar.

22, 2013), report and recommendation adopted, No. 13 CR. 155 SHS, 2013 WL 1736466

(S.D.N.Y. Apr. 11, 2013) (declining jurisdiction over a Rule 41(g) motion because of "the risk of

conflicting results and the impracticability of concurrent, but separate, civil and criminal actions

concerning the same property."); Account Servs. Corp. v. United States, No. 09 CV 1495 JM

RBB, 2009 WL 2755649, at *4 (S.D. Cal. Aug. 27, 2009) )("Furthermore, for this court to

exercise jurisdiction over the motion, which deals with similar substantive issues present in the

New York criminal proceeding, would certainly duplicate judicial resources and risk contrary

decisions regarding the property. The court therefore concludes ASC has an adequate, although

imperfect, legal remedy available to it.").

      Here, CBP began administrative proceeding on September 23, 2014, and on May 12,

2015, timely commenced an in rem civil forfeiture proceeding pursuant to CAFRA and 18

U.S.C. § 2323(a) to condemn the property and currency it seized from the Petitioners'

warehouses.  To be successful in the Civil Forfeiture Proceeding, the Government must show by

a preponderance of the evidence that the seized merchandise and currency are counterfeit or

represent proceeds from trafficking in counterfeit goods.  See United States v. Sum of

$185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967, 731 F.3d 189, 196

(2d Cir. 2013) ("Under CAFRA, the burden of proof now rests solely with the government to show by a preponderance of the evidence — rather than mere probable cause — that the property is subject to forfeiture.").

In their present motion, the Petitioners request a hearing to resolve the same question at issue in the Civil Forfeiture Proceeding — namely, "whether or not the property being withheld by the Government is indeed 'counterfeit.'"  (The Pets.' Letter Br. at 6.)  Were the Court to grant such a hearing, it would be duplicative of the Civil Forfeiture Proceeding and risk contrary decisions over the same property, a result that courts in this Circuit have repeatedly discouraged. See De Almeida v. United States, 459 F.3d 377, 383 (2d Cir. 2006) ("In light of the remedy available to Petitioners in New Jersey, the harm asserted by them, and the serious risk of duplicative proceedings and conflicting results, we see no abuse of discretion in the district court's dismissal."); In Re One 1987 Jeep Wrangler Automobile, 972 F.2d at 476 ("Under all of the above scenarios, the claimant is afforded the opportunity to test the legality of the seizure in the forfeiture proceeding. . . . Consequently, once the administrative process has begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a Rule 41(e) motion.").

The Petitioners do not distinguish De Almeida or In Re One 1987 Jeep Wrangler Automobile, which**,** as noted above**,** clearly state that "pending administrative or civil forfeiture proceeding affords an adequate remedy at law and thereby justifies dismissal of the Rule 41(g) motion."  459 F.3d at 381.  Nor do they explain in any coherent way why they cannot adequately test the legality of the Government's seizure of their property in the Civil Forfeiture Proceeding. As such, the Court finds the contention by the Petitioners that they "will be denied any relief if

this Court finds no jurisdictional basis to evaluate this property" to be unsupported and without merit.

Therefore, in light of the pending Civil Forfeiture Proceeding, the Court finds that it lacks the jurisdiction to hold a hearing regarding whether the property seized by the Government is counterfeit. Accordingly, the Petitioners' request for an evidentiary hearing is denied.

## B. As to Whether Due Process Requires a Probable Cause Hearing

The Petitioners also assert that they are entitled under the Due Process Clause of the Fifth Amendment to a probable cause hearing to contest the validity of the Search Warrants. (The Pets.' Letter Br. at 5–6.)

The Government responds that: (i) the Petitioners are not constitutionally entitled to a probable cause hearing in a case such as this; and (ii) even if they were, the Government has submitted sufficient evidence for the Court to find probable cause justifying the seizure of the Petitioners' property. (Gov't Letter Br. at 3.) The Court agrees as to the Government's first argument and therefore does not reach the second.

The Supreme Court recently addressed an analogous issue in <u>Kaley v. United States</u>, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014). There, the defendants were indicted for reselling stolen medical devices and money laundering. <u>Id.</u> The district court entered an order, without a hearing, pursuant to 18 U.S.C. § 853(e)(1), which prevented the defendants from transferring assets involved in the alleged offenses, including certain funds that they intended to use for their legal defense. <u>Id.</u> The district court denied the defendants' request for an evidentiary hearing on the question of whether the Government had probable cause to freeze their assets. <u>Id.</u> at 1096. The Eleventh Circuit later affirmed. <u>Id.</u>

The Supreme Court in <u>Kaley</u> affirmed the decision of the Eleventh Circuit.  <u>Id.</u> at 1100.

It reasoned, "[i]f judicial review of the grand jury's probable cause determination is not

warranted (as we have so often held) to put a defendant on trial or place her in custody, then

neither is it needed to freeze her property."  <u>Id.</u> at 1098.   Accordingly, the Court found that an

indicted defendant whose assets are frozen prior to trial has no right to a hearing to challenge the

asset freeze because in doing so, that defendant would essentially be seeking to re-litigate the

grand jury's finding of probable cause:

> And we have repeatedly affirmed a corollary of that standard: A defendant has no
> right to judicial review of a grand jury's determination of probable cause to think
> a defendant committed a crime. In combination, those settled propositions signal
> defeat for the Kaleys because, in contesting the seizure of their property, they
> seek only to relitigate such a grand jury finding.

<u>Id.</u> at 1100.

Here, the Government seized the Petitioners' property pursuant to the Search Warrants,

which were issued based on determinations by Judge Wall and Judge Freeman that there was

probable cause to believe that the Petitioners' warehouses contained counterfeit goods.  (Liotti

Decl., Dkt. No. 10, Ex. A.)  This scenario is slightly different than the one in <u>Kaley</u> because in

<u>Kaley</u>, the petitioners' property was forfeited based on a grand jury's determination of probable

cause.

However, in <u>United States v. Any & all Funds on Deposit in Account No. 0139874788, at

Regions Bank, held in the name of Efans Trading Corp.</u>, No. 13 Civ. 7983(KPF), 2015 WL

247391 at *13 (S.D.N.Y. Jan. 20, 2015), a district court applied <u>Kaley</u> to a situation similar to the

present case.  In <u>Efans Trading Corp.</u>, the Government filed an *in rem* civil forfeiture action

against assets seized by the Government in executing search warrants issued by magistrate

judges.  <u>Id.</u> at *1–2.  The court, relying on <u>Kaley</u>, denied the petitioners' request for a probable

cause hearing.  Id. at *13.  The court found the fact that the probable cause determination was

made by a magistrate, and not a grand jury as in Kaley, "makes no difference to the analysis."

Id.  The court further noted that such a result is in line with the decisions by other district courts

in this Circuit, which have accorded great deference to the probable cause determinations of

magistrate judges. Id.; see, e.g., United States v. Dupree, 781 F. Supp. 2d 115, 133 (E.D.N.Y.

2011) ("[G]iven the deference to be accorded to the determination of magistrate judges and the

presumption that Magistrate Judges Go and Reyes carefully considered the facts presented and

the applicable law prior to issuing the seizure warrants, [the] defendants' request for a hearing to

determine whether the least restrictive means of securing the funds was used is denied."); United

States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1 in

the Name of Ishar Abdi & Barbara Abdi, 255 F. Supp. 2d 56, 72 (E.D.N.Y. 2003) (denying a

motion for a probable cause hearing because "the court here made a determination of probable

cause when it issued a warrant for the funds in the brokerage accounts").

 Here, the Government seized the Petitioners' property pursuant to the Search Warrants

that were issued based on the probable cause determinations of two magistrate judges.  Based on

the reasoning of Kaley and Efans Trading Corp., a probable cause hearing is neither appropriate,

nor constitutionally required.  See Kaley, 134 S. Ct. at 1103 ("This Court has repeatedly declined

to require the use of adversarial procedures to make probable cause determinations."); see also

Efans Trading Corp., 2015 WL 247391 at *15 ("In sum, having considered Claimants'

arguments in light of Kaley . . . , the Court denies Claimants' request for a probable cause

hearing.").

 Moreover, the Petitioners will have ample opportunity to test legality of the

Government's seizure in the Civil Forfeiture Proceeding.  See United States v. Von Neumann,

474 U.S. 242, 249, 106 S. Ct. 610, 614, 88 L. Ed. 2d 587 (1986) ("[T]he forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect Von Neumann's property interest in the car."); Efans Trading Corp., 2015 WL 247391 at 15. ("Supplemental Rule G provides Claimants with an adequate procedure to contest the seizure of Claimants' property, namely, trial."). Indeed, in the context of a Civil Forfeiture Proceeding, the Government will be required to show by, a preponderance of the evidence, that the property and currency seized by the Government is counterfeit. See 18 U.S.C. § 2323; 18 U.S.C. 983(c)(1). Preponderance of the evidence is, of course, a higher standard than probable cause. See United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967, 731 F.3d 189, 196 (2d Cir. 2013) ("Under CAFRA, the burden of proof now rests solely with the government to show by a preponderance of the evidence — rather than mere probable cause — that the property is subject to forfeiture."). Therefore, it appears that the Petitioners will have a better opportunity to challenge the legality of the Government's seizure in the context of the Civil Forfeiture Proceeding, where the Government bares a more onerous burden of proof, than in the context of a probable cause hearing.

In arguing that they are entitled to a probable cause hearing, the Petitioners primarily rely on United States v. Contents of Accounts, No. 3:10-CV-228-H, 2010 WL 2556849, at *1 (W.D. Ky. June 18, 2010). In that case, the Government commenced civil forfeiture proceedings against property seized in executing search warrants issued by magistrate judges, and the defendants filed a motion seeking a return of their property and a probable cause hearing. Id. at 2. The court found that a probable cause hearing was appropriate because "denying [the] [d]efendants a full opportunity to challenge the pre-trial seizure of their property could raise due process concerns." Id. at *10. Although the decision supports the Petitioners' argument, the

decision of an out-of-Circuit district court is not binding on this Court. Furthermore, it appears to be in tension with the Supreme Court's subsequent decision in <u>Kaley</u> and the decisions by other district court in this Circuit discussed above. Accordingly, the Court declines the Petitioners' invitation to follow <u>Contents of Accounts</u>.

Therefore, for the foregoing reasons, the Petitioners' request for a probable cause hearing is denied.

## C. As to the Motion for Contempt

Finally, the Petitioners seek an order finding the Government in contempt of the January 10, 2015 Order. (The Pets.' Letter Br. at 2.) That Order directs the Government to "release and [make] available for immediate pick up by the Petitioners" "all legitimate, non-counterfeit property." (January 10, 2015 Order at 2–3.) The Petitioners acknowledge that the Government returned some of the property that it seized. (Liotti Decl., Dkt. No. 10, at ¶ 7.) However, they contend that the Government has failed to return the "majority" of their property, which they claim is legitimate and not counterfeit. (<u>Id.</u>) Accordingly, the Petitioners assert that the Government is in violation of the January 10, 2015 Order and should be compelled to return the Petitioners' property. (The Pets.' Letter Br. at 2.)

In response, the Government asserts that it has complied with the January 10, 2015 Order. (Branda Aff. at ¶ 2.) An affidavit filed by Branda, the special agent with HIS, provides a list of the Petitioners' property that the Government deemed not counterfeit and has made available to the Petitioners. (<u>Id.</u> at ¶¶ 5–7.) Branda further alleges that the property that it did not release to the Petitioners is counterfeit and attaches forms issued by CBP attesting to the alleged counterfeit nature of the property. (Branda Aff. Ex. B.) As the Government claims to have timely released to the Petitioners the property that it deems to be non-counterfeit and

legitimate, the Government asserts that the Petitioners' motion for contempt should be dismissed. (Id. at ¶ 2.)  The Court agrees.

"A contempt order is a 'potent weapon,' . . . that is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of the defendant's conduct[.]'"  Latino Officers Ass'n City of New York, Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009) (citation omitted).  As a contempt order is a severe sanction, it "is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict."  King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995); see also Auburn Hous. Auth. v. Martinez, No. 00 CIV. 6444(WHP), 2002 WL 31926162, at *2 (S.D.N.Y. Mar. 27, 2002) ("Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases.") (quoting City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n, 170 F.3d 279, 282-83 (2d Cir. 1999)).  Specifically, the "movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  Latino Officers Ass'n City of New York, Inc., 558 F.3d at 164 (quoting King, 65 F.3d at 1058).

Here, the Branda submitted an affidavit stating that the Government promptly attempted to arrange the release of the Petitioners' property that it deemed to be non-counterfeit.  (Branda Aff. at ¶ 2.)  In response, the Petitioners' attempt to broaden language of the January 10, 2015 Order by interpreting it to require the Government to "return . . . all property if this case was not indicted by January, 2015."  (Liotti Letter Br. at 2.)  That, of course, is not what the clear language of the January 10, 2015 Order states.  Rather, the Order directs the Government to

release and make available only "<u>legitimate non-counterfeit property</u>" property.  (January 10, 2015 Order at 2–3) (emphasis added).  While the Petitioners may disagree with the Government's determination that the property it did not release is counterfeit, such a dispute of fact is a far cry from the clear and convincing evidence of non-compliance required for the Court to issue an order of contempt.  See <u>Latino Officers Ass'n City of New York, Inc.</u>, 558 F.3d at 164 ("A contempt order is . . . is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of the defendant's conduct[.]'") (quoting <u>Cal. Artificial Stone Paving Co. v. Molitor</u>, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885)); <u>see also</u> <u>Liberty Propane L.P. v. Feheley</u>, 522 F. App'x 38, 38-39 (2d Cir. 2013)  ("A party may be held in civil contempt for failure to comply with a court order only if . . . the proof of noncompliance is clear and convincing[.]") (quoting <u>Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 655 (2d Cir. 2004)).  Moreover, as stated above in Section II.A, any question about the legitimacy of the seized property should be litigated in the Civil Forfeiture Proceeding and not in the context of a contempt proceeding.

Therefore, in light of the evidence showing the Government's compliance with the January 10, 2015 Order, the Court denies the Petitioners' motion for contempt.

### III. CONCLUSION

For the foregoing reasons, the Court denies the motion by the Petitioners for (i) an evidentiary hearing to determine the legitimacy of the property seized by the Government; (ii) a probable cause hearing to test the legality of the Government's seizure; and (iii) an order finding the Government in contempt of the January 10, 2015 Order.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
June 6, 2015

_/s/ Arthur D. Spatt_ _____
ARTHUR D. SPATT
United States District Judge